# United States Court of Appeals for the Federal Circuit

2007-3292

STEPHEN W. GINGERY,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Andrew J. Dhuey of Berkeley, California argued for petitioner.

Hillary A. Stern, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director. Of counsel was Brian T. Edmunds, Trial Attorney. Of counsel on the brief were Kerry B. Mctigue, General Counsel, and Steven Abow, Assistant Counsel, Office of Personnel Management, of Washington, DC.

Elaine D. Kaplan, Senior Deputy General Counsel, National Treasury Employees Union, of Washington, DC, argued for amicus curiae. With her on the brief were Gregory O'Duden, General Counsel, and Timothy B. Hannapel, Assistant Counsel.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3292

STEPHEN W. GINGERY,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Petition for review of the Merit Systems Protection Board in CH3443060582-I-1.

_____

DECIDED: December 24, 2008

_____

Before NEWMAN, PROST, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge MOORE. Concurring opinion filed by Circuit Judge NEWMAN.

MOORE, Circuit Judge.

Petitioner Stephen Gingery appeals a final decision of the Merit Systems Protection Board (MSPB) holding that the Department of Defense (DoD) did not violate his rights under the Veterans Employment Opportunities Act (VEOA) of 1998 when it hired two non-preference eligible individuals under the Federal Career Intern Program (FCIP) and did not hire Mr. Gingery. For the reasons set forth below, we reverse and remand.

BACKGROUND

I

Most federal civil service employees are employed by way of either the "competitive service" or the "excepted service." 5 U.S.C. §§ 2102(a)(1), 2103(a) (2006). Agencies tend to have more flexible hiring for excepted service positions as opposed to competitive service positions. Competitive service hiring often entails an examination administered by the Office of Personnel Management (OPM). See Nat'l Treasury Employees Union v. Horner, 854 F.2d 490, 492 (D.C. Cir. 1988). Excepted service hiring, by contrast, does not require an examination and includes "a variety of more flexible and informal procedures—some established by OPM and others developed by individual agencies." Id.; see also 5 C.F.R. pt. 213 (Excepted service). The President possesses the authority to "prescribe rules governing the competitive service," which themselves "shall provide, as nearly as conditions of good administration warrant, for . . . necessary exceptions of positions from the competitive service." 5 U.S.C. § 3302(1) (emphasis added).

President Clinton created the FCIP under an executive order and pursuant to § 3302(1) "in order to provide for the recruitment and selection of exceptional employees for careers in the public sector." Exec. Order No. 13,162, 65 Fed. Reg. 43,211 (July 6, 2000). Section 4(a) of the Executive Order explained that "[a] successful candidate shall be appointed to a position in Schedule B of the excepted service . . . unless otherwise approved by the OPM." The President delegated to OPM responsibility for "prescrib[ing] such regulations as it determines necessary to carry out the purpose of this Order." Id. § 6.

Pursuant to the Executive Order, OPM promulgated 5 C.F.R. § 213.3202(o). See 70 Fed. Reg. 44,219 (Aug. 2, 2005); 65 Fed. Reg. 78,077 (Dec. 14, 2000). Subsection (1) of this regulation requires agencies to follow the procedures set forth in 5 C.F.R. pt. 302, Employment in the Excepted Service, when making appointments under the FCIP. Accordingly, agencies may evaluate candidates under a "category rating" system instead of the traditional "numerical rating" system. 5 C.F.R. § 302.401(a). When using a category rating system, "an agency must make its selection from the highest available preference category, as long as at least three candidates remain in that category. When fewer than three candidates remain in the highest category, consideration may be expanded to include the next category." Id.

When an agency chooses to select a candidate from one of these next categories, it must comply with certain passover procedures. For the competitive service, 5 U.S.C. § 3318(b) requires that "[i]f an appointing authority proposes to pass over a preference eligible on a certificate in order to select an individual who is not a preference eligible, such authority shall file written reasons with [OPM] for passing over the preference eligible" and obtain OPM's permission for the passover. 5 U.S.C. § 3318(b)(1). When a preference eligible has a compensable service-connected disability of 30% or more, "the authority shall at the same time it notifies [OPM] under paragraph (1) of this subsection, notify the preference eligible of the proposed passover, of the reasons thereof, and of his right to respond." Id. § 3318(b)(2). Also in the case of such a preference eligible, OPM's functions cannot be delegated. Id. § 3318(b)(4). For the excepted service, on the other hand, OPM enacted a passover regulation, 5 C.F.R. § 302.401(b), that provides less procedural protections:

When an agency, in making an appointment as provided in paragraph (a) of this section, passes over the name of a preference eligible who is entitled to priority consideration under § 302.304 and selects a non-preference eligible, it shall record its reasons for so doing, and shall furnish a copy of those reasons to the preference eligible or his/her representative on request.

## II

The parties do not dispute the facts as they pertain to Mr. Gingery's employment. The Defense Contract Audit Agency (DCAA) solicited applications for three auditor positions under the FCIP, though it subsequently withdrew an offer for one of the positions for unrelated reasons. Mr. Gingery, a preference-eligible veteran with service-connected disability rated at 30% or more, applied for these auditor positions. DCAA considered OPM certificates of eligibles and used a category rating system to fill the auditor positions. Mr. Gingery's veterans' preference placed him in Category 1; there were no other applicants in Category 1 or in Categories 2 or 3. There were six candidates in Category 4. Because there were fewer than three candidates in Category 1, DCAA considered the applicants in Category 4 under section 302.401(a), in addition to considering Mr. Gingery. Of the applicants ultimately referred to the selecting official for consideration and interviews, only Mr. Gingery had veterans' preference. Nevertheless, a panel of supervisory auditors did not recommend Mr. Gingery for a second interview. Instead, DCAA hired two auditors under the FCIP. DCAA ultimately selected two non-preference eligibles (i.e., applicants not eligible for preference) from Category 4 and, in accordance with section 302.401(b), recorded its reasons for not selecting Mr. Gingery. The DCAA selecting official did not request OPM permission to pass over Mr. Gingery but rather requested and received permission from a human

resources manager. The official also did not notify Mr. Gingery of the proposed passover, of the reasons for the proposed passover, or of his right to respond.

III

Mr. Gingery filed a complaint with the Department of Labor under the VEOA. When that Department failed to resolve his complaint, Mr. Gingery appealed to the MSPB. Mr. Gingery alleged that "DCAA willfully violated his veterans' preference rights under the VEOA when it failed to select him for any of the auditor-trainee positions, failed to request permission from [OPM] to pass him over and failed to notify him of its intent to pass him over in accordance with the procedures set forth under 5 U.S.C. § 3318(b)." In an initial decision, the administrative judge (AJ) explained that § 3318 applies only to the competitive service and that the auditor positions were filled as excepted service positions under the FCIP. The AJ noted that nothing in the record indicated that Mr. Gingery requested the reasons for being passed over and that DCAA therefore complied with 5 C.F.R. § 302.401(b) when it provided a written statement of its reasons for not selecting Mr. Gingery. The AJ concluded that DCAA did not violate Mr. Gingery's veterans' preference rights.

Mr. Gingery petitioned the MSPB for review of the AJ's initial decision on the basis that "[DoD's] hiring under the FCIP constitutes improper circumvention of his preference rights." The MSPB granted review and concluded that the FCIP constituted a valid exception to hiring in the competitive service because the FCIP "was expressly authorized by an Executive order promulgated under 5 U.S.C. § 3302." It further explained that OPM promulgated regulations pursuant to the Executive Order and that

DoD complied with those regulations and the corresponding excepted service regulations to which they referred. Thus the MSPB affirmed the AJ's initial decision.

## DISCUSSION

Mr. Gingery appeals the MSPB's final decision on two grounds. He argues that OPM's passover regulation (5 C.F.R. § 302.401(b)) is invalid because it is inconsistent with the passover procedures of 5 U.S.C. § 3318(b) when applied to the excepted service via 5 U.S.C. § 3320. Mr. Gingery also argues that "the FCIP is unlawful in its entirety" because it violates § 3302(1)'s requirement that exceptions to the competitive service be "necessary" for "conditions of good administration." DoD responds that 5 C.F.R. § 302.401 is valid and was properly applied by OPM and that Executive Order 13,162 represents the President's unfettered discretion to place civil service positions in the excepted service. Because we conclude that OPM's passover regulation is invalid and that Mr. Gingery's veterans' preference rights were violated, we need not reach the broader questions of the FCIP's validity.[1]

I

Under 28 U.S.C. § 1295(a)(9), we have jurisdiction over Mr. Gingery's appeal of the MSPB's final decision. We must set aside findings or conclusions of the MSPB that we find to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or

---

[1] We note that the decision of the MSPB on appeal did not address Mr. Gingery's argument regarding whether the FCIP or the decisions to place the auditor positions into the excepted service via the FCIP was lawful. Should it become necessary to resolve this issue, the MSPB should do so in the first instance. See Horner, 854 F.2d at 490. If this remand does not resolve Mr. Gingery's case, we note that he is not precluded from renewing his FCIP challenges before the MSPB.

regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review questions of law including the interpretation of statutes and regulations de novo. Augustine v. Dep't of Veterans Affairs, 503 F.3d 1362, 1365 (Fed. Cir. 2007).

We review the validity of an agency's interpretation of a statute under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). A Chevron analysis entails first asking "whether Congress has directly spoken to the precise question at issue." Id. at 842. If so, we "must give effect to the unambiguously expressed intent of Congress." Id. at 843. If, however, "the statute is silent or ambiguous with respect to the specific issue," we ask "whether the agency's answer is based on a permissible construction of the statute." Id.

II

The precise question at issue in this case is what procedures an agency should follow when it passes over a preference eligible having a compensable service-connected disability of 30% or more and selects a nonpreference eligible for a position in the excepted service. For the competitive service, 5 U.S.C. § 3318(b) requires that an appointing authority obtain OPM's permission and, when a preference eligible has a compensable service-connected disability of 30% or more, notify the preference eligible of the proposed passover, of the reasons for the passover, and of his right to respond. OPM's regulation, which applies to the excepted service, requires only that an appointing authority record its reasons for the passover and provide a copy of these reasons to the preference eligible or her representative upon request. We conclude, however, that Congress has already addressed this question in applying the competitive

service passover procedures of 5 U.S.C. § 3318(b) to the excepted service via 5 U.S.C. § 3320.

Selection into the excepted service in the executive branch shall be conducted "in the same manner and under the same conditions required for the competitive service by [5 U.S.C. §§] 3308–3318." 5 U.S.C. § 3320 (2006). The 1966 codification of Title 5, Pub. L. No. 89-554, 80 Stat. 378, combined former §§ 858 and 869 to create the current § 3320. 5 U.S.C. § 3320 (Historical and Revision Notes); see also S. Rep. No. 89-1380, at 64 (1966). Section 858 referred to selection in the unclassified civil service and directed an official to make any such selection "in accordance with provisions of this chapter." The corresponding chapter—Chapter 17—was titled "Preference of Veterans in Government Employment (New)." Section 869 essentially excluded the legislative and judicial branches from Chapter 17, which the current § 3320 accomplishes by specifying that it applies only to the executive branch and the government of the District of Columbia. The Historical and Revision Notes further explain that former §§ 858 and 869 were restated in § 3320 "to conform to section 3318(a)." 5 U.S.C. § 3320 (Historical and Revision Notes).

Section 3318 is titled "Competitive service; selection from certificates." Subsection (a) refers to certificates furnished under § 3317(a).[2] Under subsection (b), when "an appointing authority proposes to pass over a preference eligible on a certificate," the authority must file written reasons for the passover with OPM and get OPM's permission for the passover. Id. § 3318(b)(1). When a preference eligible has a

---

[2] The Historical and Revision Notes following § 3317 in the United States Code explain that "[a]pplication of the section to the excepted service in the executive branch . . . , as provided in former section 858, is carried into section 3320." 5 U.S.C. § 3317 (2006) (Historical and Revision Notes).

compensable service-connected disability of 30% or more, "the authority shall at the same time it notifies [OPM] under paragraph (1) of this subsection, notify the preference eligible of the proposed passover, of the reasons thereof, and of his right to respond." Id. § 3318(b)(2). The statute prohibits the delegation of OPM's functions in these cases. Id. § 3318(b)(4). By contrast, when a preference eligible has a compensable service-connected disability of less than 30%, the authority need only provide the reasons for passover and the OPM findings upon request. Id. § 3318(b)(3).

Taken together, §§ 3320 and 3318 resolve the first step of our Chevron analysis. Through § 3318, Congress spoke on the question of what procedures an agency should follow when it passes over a preference eligible and selects a nonpreference eligible for a position in the competitive service. And through § 3320, Congress makes clear that § 3318 applies in the same manner to the excepted service.

The government argues that in Patterson v. Department of the Interior, 424 F.3d 1151 (Fed. Cir. 2005), we held that OPM had responsibility for implementing all veterans' preference rights in the excepted service. The government argues that it continues to give veterans' preferences, but that it is not required to follow the exact statutory protections enacted by Congress. The government misinterprets our decision in Patterson. In Patterson, the veteran challenged an OPM regulation that did not require the addition of points based on veterans' preference to a qualifying rating or ranking, which the agency used to evaluate applicants. Id. at 1157. He argued that this regulation was invalid as contrary to the plain language of §§ 3320 and 3309, which required the addition of points to a rating when appointment was made through examination. At issue was how an agency should "apply the principles of veterans'

preference to positions within the excepted service that are not subject to examination."

Id. at 1158–59. We reasoned as follows:

> § 3309 is silent on the issue of how agencies should apply veterans' preference rights to a preference eligible in the <u>competitive service</u> who is <u>not required to pass an examination</u>. . . . It therefore necessarily follows that Congress has not spoken on the issue of how to apply the principles of veterans' preference to positions within the <u>excepted service</u> that are <u>not subject to examination</u>. . . . [T]he regulations issued by OPM to fill this gap are therefore entitled to deference under <u>Chevron</u>.

Id. at 1158–59 (emphasis added). Although § 3320 clearly requires §§ 3308–3318 to apply to the excepted service in the same manner as the competitive service, it was impossible for § 3309 to be applied in the <u>Patterson</u> case. Section 3309 applied only to those who take exams. Because the excepted service applicants at issue in Patterson were not subject to an exam, § 3309 was inapplicable to them—in fact, it would have been impossible to apply. We concluded therefore that OPM's regulation was reasonable and consistent with the Veterans' Preference Act (VPA) of 1944, Pub. L. No. 78–359, 59 Stat. 387 (codified at 5 U.S.C. §§ 2108, 3309–3320), which provides preference eligible veterans with additional benefits in seeking civil service employment. <u>Patterson</u>, 424 F.3d at 1159.

The present case is distinguishable from <u>Patterson</u> because there is no examination requirement in § 3318 and no analogous requirement that would preclude application of § 3318 to the excepted service under § 3320. Section 3309 applied to examinations, which are specific to the competitive service, whereas § 3318 applies to selection from certificates, which are used in both the competitive and excepted services. Because Congress clearly and unambiguously stated in § 3320 that § 3318 should apply to the excepted service in the same manner it applies to the excepted

service, OPM is not entitled to <u>Chevron</u> deference, and we "must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 843.

III

OPM's regulation—5 C.F.R. § 302.401(b)—is invalid because it provides 30% or more disabled Veterans with less protection than Congress guaranteed them in § 3318. The regulation demands only that an agency (1) <u>record</u> its reasons for passing over the preference eligible and (2) <u>upon request</u>, <u>provide</u> a copy of those reasons to the preference eligible or her representative. Title 5, however, requires that an agency's appointing authority obtain OPM <u>permission</u> to pass over the preference eligible. 5 U.S.C. § 3318(b)(1) (2006). Moreover, § 3318(b) provides additional protections for preference eligibles having a compensable service-connected disability of 30% or more. For these individuals, the appointing authority must—at the time it solicits OPM's permission for the intended passover and regardless of any request—"notify the preference eligible of the proposed passover, of the reasons thereof, and of his right to respond." <u>Id.</u> § 3318(b)(2). The statute even requires "a demonstration by the appointing authority that the passover notification was timely sent to the preference eligible's last known address." <u>Id.</u> Lastly, OPM's functions cannot be delegated. <u>Id.</u> § 3318(b)(4).

Therefore, OPM's promulgated regulation, 5 C.F.R. § 302.401(b), which establishes <u>lesser</u> protections for veterans who are 30% or more disabled, is at odds with the statutory protections Congress guaranteed these veterans. Because Congress has already addressed precisely this issue and OPM's regulation conflicts with the statute itself, we hold this OPM passover regulation invalid.

CONCLUSION

We conclude that 5 C.F.R. § 302.401(b) is invalid because it does not give effect to the unambiguously expressed intent of Congress in enacting 5 U.S.C. §§ 3320 and 3318. There is no question that the requirements of § 3318 (as applied to the excepted service via § 3320) were not met in this case. The final decision of the MSPB is therefore

REVERSED and REMANDED.

# United States Court of Appeals for the Federal Circuit

2007-3292

STEPHEN W. GINGERY,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Petition for review of the Merit Systems Protection Board in CH3443060582-I-1.

NEWMAN, <u>Circuit Judge</u>, concurring.

I agree that 5 C.F.R. §302.401(b) is inconsistent with statutory requirements regarding pass-over procedures, and that reversal and remand for application of the proper procedures are appropriate. I join the court's holding on this issue. I write separately because the court has not treated the central issue of this appeal, an issue that can have a larger effect on Mr. Gingery's legal rights than the correct application of the pass-over provisions.

Mr. Gingery's central argument relates to the placement into the excepted service of the auditor position for which he applied. This deprived him of important veterans' preference rights that apply to competitive service positions. He argues that the Federal Career Internship Program ("FCIP") was improperly implemented for this position, and that the GS-0511 auditor position for which he applied would normally be

filled through competitive examination and associated hiring rules, which he states would have granted him ten preference points as a veteran with at least 30% disability. This aspect is squarely presented on this appeal. It was not a secondary or alternative argument, as the court now suggests, maj. op. at 6, nor was it an issue that "the decision of the MSPB on appeal did not address," id. at 6 n.1. On the contrary, the full Board, on review of the AJ's initial decision, discussed the validity of the FCIP at some length. Gingery v. Dep't of Defense, 105 M.S.P.R. 671, 674-75 (2007). As the majority states: "The MSPB granted review and concluded that the FCIP constituted a valid exception to hiring in the competitive service . . . ." Maj. op. at 5.

On this appeal Mr. Gingery again points to the cases in which the Board had previously found that appointments made pursuant to alternative hiring programs were not valid exceptions from the competitive service, and violated veterans preference rights. See Dean v. Dep't of Agriculture, 104 M.S.P.R. 1 (2006) (discussing Outstanding Scholar Program appointments); Deems v. Dep't of Treasury, 100 M.S.P.R. 161 (2005) (discussing Clerical and Administrative Support Positions appointments). Responding to Mr. Gingery's argument that the issues are analogous, the Board stated: "The FCIP authority used here, however, differs from those used in the cases on which the appellant relies because it represents a valid exception to the competitive examination requirement." Gingery, 105 M.S.P.R. at 675. It is this holding to which Mr. Gingery directed most of his briefing on this appeal, and which attracted the participation of the National Treasury Employees Union ("NTEU") as amicus curiae. The NTEU stresses the growth of excepted hiring pursuant to the FCIP, as compared with competitive hiring, as the predominant hiring mechanism for entry-level positions in

the executive branch.  Mr. Gingery argues that the auditor position for which he applied was improperly placed within the internship program and thereby removed from the competitive service.  This issue of this appeal is separate from the issue of validity of OPM's regulation on the pass-over procedures.

Pursuant to 5 U.S.C. §2102(a)(1), the competitive service includes "all civil service positions in the executive branch" except those "positions which are specifically excepted from the competitive service by or under statute," or other limited exceptions that do not apply to the auditor position at issue.  The statutory authorization for the exception of positions from the competitive service appears at 5 U.S.C. §3302:

> The President may prescribe rules governing the competitive service.  The rules shall provide, as nearly as conditions of good administration warrant, for—
>> (1) necessary exceptions of positions from the competitive service; . . . .

The FCIP was implemented by Executive Order No. 13,162, which assigned its administration to OPM.  Mr. Gingery and the NTEU state that exceptions from competitive hiring procedures for executive branch civil service positions require, under 5 U.S.C. §3302, a showing of necessity.

Mr. Gingery and the NTEU point out that hiring pursuant to the FCIP, as it pertains to the auditor position for which Mr. Gingery applied, does not meet the statutory necessity requirement.  The government conceded that no showing of necessity was made for the auditor position at issue here, and argued instead that the President and OPM and all of the executive branch agencies have "unfettered discretion" to except positions from the competitive service.  This argument was rejected in National Treasury Employees Union v. Horner, 854 F.2d 490 (D.C. Cir.

1988), where the court held to be arbitrary and capricious OPM's movement of competitive positions into the excepted service, with no reasonable showing of necessity under 5 U.S.C. §3302. The court stated: "In this case, as the district court found, several provisions of title 5 of the U.S. Code, viewed together, provide a meaningful—not a rigorous, but neither a meaningless—standard against which to judge OPM's decision to convert the PAC positions from competitive to excepted status." Id. at 495.

Mr. Gingery states that the auditor position for which he applied was not listed in the OPM's annual report of excepted positions, citing 70 Fed. Reg. 2284 (Jan. 12, 2005) and 71 Fed. Reg. 58,680 (Oct. 4, 2006). The auditor position was not shown to be a "necessary exception" to the standard procedures of the competitive service. I recognize that the considerations are complex; however, the issue was fully and fairly raised on this appeal, and has a direct impact on this petitioner, for the veteran states that he is deprived of his statutory additional points of rating. See 5.U.S.C. §3309(1); see also 5 U.S.C. §3318(b)(1), (2).

This was a primary issue addressed in the briefing and at oral argument of Mr. Gingery's appeal. The issue is before this court, and it should be discussed and resolved.