**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 22**

Docket No. AT-3330-13-0235-I-1

**David Dean,**

**Appellant,**

**v.**

**Department of Labor,**

**Agency.**

February 26, 2015

David Dean, Lugoff, South Carolina, pro se.

Melanie L. Paul, Atlanta, Georgia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has petitioned for review of the initial decision that denied his request for corrective action in this Veterans Employment Opportunities Act of 1998 (VEOA) appeal.  For the reasons set forth below, we DENY the petition for review and AFFIRM the initial decision.

## BACKGROUND

¶2      The facts of this case are undisputed.  The Department of Labor (DOL or agency) announced a vacancy for a GS-1849-07/09 "Recent Graduate" Wage and Hour Specialist position.  Initial Appeal File (IAF), Tab 8 at 10-20.  The

announcement indicated that the "appointment is [a part] of the Pathways Employment Program" and open to "[e]ligible recent graduates from qualifying educational institutions." *Id*. at 10. The appellant, a preference-eligible veteran, applied for the position. *Id*. at 21-43. The DOL rated him ineligible because he did not graduate from a qualifying educational institution within the timeframes established under the Pathways Recent Graduates Program. *Id*. at 22; *see* 5 C.F.R. § 362.302.[1]

¶3      After exhausting his administrative remedies, the appellant filed a VEOA appeal with the Board and requested a hearing. IAF, Tab 1 at 3-4, 13-14. He argued that the DOL violated his veterans' preference rights by excluding him from consideration for the "Recent Graduate" Wage and Hour Specialist job on the basis that he did not meet the Pathways Recent Graduates Program criteria. The administrative judge issued a jurisdictional order informing the appellant of

---

[1] Section 362.302 states that:

> (a) A Recent Graduate is an individual who obtained a qualifying associates, bachelors, master's, professional, doctorate, vocational or technical degree or certificate from a qualifying educational institution, within the previous 2 years or other applicable period provided below.
>
> (b)(1) Except as provided in paragraph (b)(2) of this section, an individual may apply for a position in the Recent Graduates Program only if the individual's application is received not later than 2 years after the date the individual completed all requirements of an academic course of study leading to a qualifying associates, bachelor's, master's, professional, doctorate, vocational or technical degree or certificate from a qualifying educational institution.
>
> (2) A veteran, as defined in 5 U.S.C. § 2108, who, due to a military service obligation, was precluded from applying to the Recent Graduates Program during any portion of the 2-year eligibility period described in paragraph (b)(1) of this section shall have a full 2-year period of eligibility upon his or her release or discharge from active duty. In no event, however, may the individual's eligibility period extend beyond 6 years from the date on which the individual completed the requirements of an academic course of study.

the standard for proving jurisdiction over a VEOA appeal and directing him to submit evidence and argument on the issue to be received by January 20, 2013. IAF, Tab 3. The administrative judge notified the appellant that the record would close on that date unless he established that the Board had jurisdiction over the appeal, in which case the record would be further developed. *Id*. at 7.

¶4        On February 1, 2013, the administrative judge issued an initial decision on the written record finding that the appellant established jurisdiction over the appeal, but denying the request for corrective action on the merits. IAF, Tab 10, Initial Decision (ID). The administrative judge did not conduct a hearing because he found that there was no genuine dispute of material fact and the agency must prevail as a matter of law. ID at 1. The administrative judge reasoned that the appellant's veterans' preference rights were not violated because he failed to meet the qualifications for the position, i.e., graduation from a qualifying educational institution within the timeframes established under 5 C.F.R. § 362.302. ID at 4. In reaching his decision, the administrative judge did not consider the appellant's January 31, 2013 submission because it was filed after the deadline set forth in the jurisdictional order. ID at 2 n.1; IAF, Tab 3 at 7, Tab 9.

¶5        The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He argues that the qualification criteria in the vacancy announcement violated his veterans' preference rights because, among other things, there is no rational basis for the recent graduate criterion. *Id*. at 6-7. He also contends that the administrative judge should have conducted a hearing and considered his January 31, 2013 submission. PFR File, Tab 1 at 4-6; IAF, Tab 9. The agency has filed a response in opposition, and the appellant has filed a reply to the agency's response. PFR File, Tabs 3-4.

¶6        At the Board's request, the agency provided additional information pertaining to its administration of the Pathways Recent Graduate Program, particularly regarding positions in the 1849 Wage and Hour occupational series.

PFR File, Tabs 5-6. The Board also requested an advisory opinion from the Office of Personnel Management (OPM) concerning its regulations governing the Recent Graduate Program. PFR File, Tab 7; *see* 5 U.S.C. § 1204(e)(1)(A). OPM, however, declined the Board's request. PFR File, Tab 11.

## ANALYSIS

The Board will decide this case on the written record.

Ordinarily, the Board will not consider evidence or argument filed after the close of the record below absent a showing that it was not previously available despite the party's due diligence. *Williams v. Department of Veterans Affairs*, 74 M.S.P.R. 472, 474 (1997). However, under the special circumstances of this case, we find it appropriate to do so.

The administrative judge's jurisdictional order explicitly stated that, if the appellant's submissions through January 20, 2013, were sufficient to establish jurisdiction over the appeal, then the record would remain open for further development on the merits. IAF, Tab 3 at 7. Therefore, because the administrative judge correctly found that the appellant established jurisdiction over the appeal, he should have allowed for further development of the record. ID at 1-3; *see Jarrard v. Department of Justice*, 113 M.S.P.R. 502, ¶ 11 (2010); *see also Ruffin v. Department of the Treasury*, 89 M.S.P.R. 396, ¶ 8 (2001).

Because the administrative judge closed the record in this VEOA appeal without proper warning, we find it appropriate to consider the arguments that the appellant advanced for the first time on petition for review and in his January 31, 2013 submission. PFR File, Tab 1; IAF, Tab 9; *see Jarrard*, 113 M.S.P.R. 502, ¶ 14 n.2. We also find that the agency has had a full and fair opportunity to respond to these arguments, that there is no genuine dispute of material fact, and that the agency must prevail as a matter of law. We therefore find it appropriate to issue a final decision at this time on the written record. *See Waters-Lindo v. Department of Defense*, 112 M.S.P.R. 1, ¶ 5 (2009) (the Board may decide the

merits of a VEOA appeal without a hearing where there is no genuine dispute of material fact and one party must prevail as a matter of law).

The History of the Pathways Recent Graduates Program

¶10        All civilian positions in the executive branch are either in the competitive service, the excepted service, the senior executive service, or by presidential appointment with the advice and consent of the Senate.  5 U.S.C. § 2102(a); *Isabella v. Department of State*, 102 M.S.P.R. 259, ¶ 12 (2006); 5 C.F.R. § 212.101(a).  Congress intended that appointment to the civil service through competitive examination be the norm.  *Dean v. Department of Agriculture*, 99 M.S.P.R. 533, ¶ 11 (2005).  Under 5 U.S.C. § 3302(1), however, "[t]he President may prescribe rules governing the competitive  service" that "provide, as nearly as conditions of good administration warrant, for—necessary exceptions of positions from the competitive service."  Citing this authority, the Pathways Programs were authorized and created by Executive Order (E.O.) 13,562, signed by President Obama on December 27, 2010.[2]  This E.O. came 6 weeks after the Board issued its decision in *Dean v. Office of Personnel Management*, 115 M.S.P.R. 157 (2010), which invalidated the Federal Career Internship Program (FCIP), itself created in 2000, by an E.O. signed by President Clinton.   We believe it is fair to characterize the Pathways Programs as successors to FCIP, especially to the extent that they were designed in good faith to address the inherent problems with FCIP that underlay the Board's decision in the 2010 *Dean* decision.

¶11        E.O. 13,562 succinctly sets forth its purpose and the public policy goals it advances.  It provides for appropriate merit-based procedures for recruitment, assessment, placement, and ongoing career development for participants in the

---

[2] E.O. No. 13,562 established the Internship Program and the Recent Graduates Program, which, along with the Presidential Management Fellows Program, are collectively known as the Pathways Programs.

programs. In addition, as we discuss below, it applies veterans' preference. Following this executive order, OPM published in the Federal Register[3] a more detailed discussion of the purpose of the Pathways Programs and its structure, parameters, and procedures.

¶12 Subsequently, pursuant to E.O. No. 13,562, §§ 2, 7, OPM promulgated regulations governing the Recent Graduates Program. 5 C.F.R. § 213.3401; 5 C.F.R. Part 362, Subparts A, C; 5 C.F.R. Parts 213, 302, 315, 330, 334, 531, 536, 537, 550, 575, and 890; *see* 77 Fed. Reg. 28,194 (May 11, 2012). Under OPM's regulations, an individual may apply for a Recent Graduates position only if his application is received not later than 2 years after the date that he completed all requirements of an academic course of study leading to a qualifying associate's, bachelor's, master's, professional, doctorate, vocational, or technical degree or certificate from a qualifying educational institution. 5 C.F.R. § 362.302(b)(1). The duration of the Recent Graduates appointment in the excepted service is a trial period. 5 C.F.R. § 362.303(f). After successfully completing 1 year under the Program, the incumbent may be noncompetitively converted to a competitive service position. 5 C.F.R. § 362.305.

5 U.S.C. § 3308 is not a statute relating to veterans' preference.

¶13 Before analyzing the dispositive issues in this case, we wish to clarify an error in our case law related to this subject. The appellant contended that the Pathways Program violated his veterans' preference rights because the vacancy announcement prescribed a minimum educational requirement. IAF, Tab 9; PFR, Tabs 1, 4. Although the appellant did not specifically cite to 5 U.S.C. § 3308, we find that his arguments implicate this statute, which states that:

> The Office of Personnel Management or other examining agency may not prescribe a minimum educational requirement for an examination for the competitive service except when the Office

---

[3] *See* 77 Fed. Reg. 28194-01 (May 11, 2012).

decides that the duties of a scientific, technical, or professional position cannot be performed by an individual who does not have a prescribed minimum education. The Office shall make the reasons for its decision under this section a part of its public records.

¶14 Previously, the Board has found that 5 U.S.C. § 3308 is a statute relating to veterans' preference. *Burroughs v. Department of the Army*, 115 M.S.P.R. 656, ¶ 12, *aff'd*, 445 F. App'x 347 (Fed. Cir. 2011).[4] As support for its determination that section 3308 relates to veterans' preference, the Board in *Burroughs* made a conclusory finding that section 3308 "ultimately derives from section 5 of the Veterans' Preference Act of 1944."[5] *Id.* However, upon further review of this matter, we find that a mere general similarity between provisions of section 3308 and the Veterans' Preference Act, by itself, is insufficient to conclude that this section relates to veterans' preference. Section 3308 was enacted in 1966, and there is no evidence, including legislative history, that Congress considered it in context related to the Veterans' Preference Act, enacted 22 years earlier, or any other issue related to veterans' employment.

¶15 As additional support for its determination that section 3308 relates to veterans' preference, the Board in *Burroughs* also cited to 49 U.S.C. § 40122(g)(2)(B), a subpart of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (Ford Act), a law which governs employees of the Federal Aviation Administration (FAA). *See* Pub. L. No. 106-181, 114 Stat. 61 (2000). Under section 40122(g)(2), Congress granted the FAA the authority to establish a personnel system that is not subject to the provisions of Title 5, with

---

[4] Although neither party cited to *Burroughs* in their pleadings, we find it necessary to analyze this issue in reference to our pertinent case law, including *Burroughs*. The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Burroughs* agreed with the Board's determination that the Department of the Army did not unlawfully include a minimum education requirement in its job posting for an Aerospace Engineer position, but it did not expressly reach the issue in dispute here, *see infra*; namely, whether section 3808 is a law relating to veterans' preference.

[5] *See* Pub. L. No. 78-359, 59 Stat. 387 (codified at 5 U.S.C. §§ 2108, 3309-3320).

certain exceptions. *See Ivery v. Department of Transportation*, 102 M.S.P.R. 356, ¶ 12 (2006). It is not evident how Title 49 could have applied in the *Burroughs* case, given that the responding agency there was the Department of the Army. Similarly, the responding agency here is the DOL, not the FAA, and so Title 49 is not implicated. In fact, the Board clearly stated in *Belhumeur v. Department of Transportation*, 104 M.S.P.R. 408, ¶¶ 7-9 (2007), that VEOA does not apply to the FAA. Consequently, we find that the Board's reliance on 49 U.S.C. § 40122(g)(2)(B) in *Burroughs* and subsequent precedent to hold that section 3308 is a statute that relates to veterans' preference was incorrect, and so we OVERRULE our determinations in *Burroughs* and its progeny on that issue.[6]

<u>Even if 5 U.S.C. § 3308 were a statute relating to veterans' preference, the Pathways Recent Graduates Program comports with that statute.</u>

¶16    As mentioned earlier, the vacancy at issue in this appeal was announced under the Recent Graduates Program. IAF, Tab 8 at 10. Broadly speaking, then, the question here is whether the educational requirement of the Recent Graduates Program, as applied in this case, is consistent with veterans' preference rights. We find that it is.

¶17    As set forth above, under 5 U.S.C. § 3308, minimum educational requirements are generally prohibited in federal employment. An examining agency or OPM may not prescribe a minimum educational requirement for the competitive service[7] except when OPM decides that the duties of a scientific, technical, or professional position cannot be performed by an individual who does not have a prescribed minimum education. If OPM decides that a minimum

---

[6] *See, e.g.*, *Asatov v. Agency for International Development*, 119 M.S.P.R. 692, ¶ 10 (2013).

[7] While this restriction, on its face, applies only to competitive service appointments, it also applies to appointments in the excepted service pursuant to 5 U.S.C. § 3320. *See Gingery v. Department of Defense*, 550 F.3d 1347, 1351-54 (Fed. Cir. 2008).

educational requirement is necessary, it is required to make the reasons for its decision a part of its public records.[8] 5 U.S.C. § 3308.

¶18      The term "professional" as used in section 3308 does not appear to have ever been defined, either in statute, by OPM regulations, or through Board case law. This is not surprising, given the commonly understood meaning of the term is that of an occupation requiring either a certain level of education or training, or a public license, which generally requires some level of preparatory study. But when put in the context of professional development by way of on-the-job training or an apprenticeship, the term "professional" naturally expands. In career development programs, a "career ladder" is created to improve and enhance management-quality skills among employees. No individual position stands alone. A GS-5 entry-level position standing alone is completely different than that exact same GS-5 entry-level position that comprises the first rung of a career development ladder. The former likely does not require a college degree, while the latter does. We find no legal authority that prevents this construct of the term "professional" in the context of section 3308.

¶19      Here, the position title on the DOL vacancy announcement is "Recent Graduate" Wage and Hour Specialist. While this position by itself may share the same duties and responsibilities with the Wage and Hour Specialist position, the two positions in fact serve different functions within the broader personnel management scheme. While the latter is a discrete job, the former is the first step in a formal career development and advancement program, which the President and OPM believe requires a minimum education requirement.

¶20      As set forth above, the President's E.O. and OPM's subsequent regulations implementing the Recent Graduates Program fully justify its educational

---

[8] This provision, enacted by Pub. L. No. 89-554 in 1966, before higher education was as prevalent as it is today, was intended in part to prevent the misuse of an educational requirement to discriminate against women and minorities in federal hiring.

requirements, and no party is in a better position to explain and defend them than OPM. In fact, OPM has made clear that there are historic, legal, and policy issues which support and clarify the operation of the Recent Graduates Program. As explained below, the general prohibition of educational requirements for federal employment set forth in 5 U.S.C. § 3308 should not impede the operation of this program.

¶21 The Board must review whether OPM "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *National Treasury Employees Union v. Horner*, 854 F.2d 490, 498-99 (D.C. Cir. 1988) (citing *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983), and quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, (1962)). The U.S. Court of Appeals for the District of Columbia Circuit has found that OPM's use of 5 U.S.C. § 3302 to authorize an exception to competitive examining must be supported by data showing the necessity for such an exception and evidence that OPM engaged in an analysis of that data. *Horner*, 854 F.2d at 498-99; *Dean*, 115 M.S.P.R. 157, ¶ 19.

¶22 Based on our review, we find that OPM published the criteria it used to provide a rational basis for this program in its public records, including its pertinent regulations, its Federal Register notices, and other records contained on OPM's website, which show that a rational basis for section 3308 has been met, both under the law and in the spirit of that law.[9] For instance, the goal of the Recent Graduates Program and of Pathways in general is to achieve the recruitment and selection of "sufficient" numbers of recent graduates. E.O. No. 13,562, § 1; 5 C.F.R. §§ 6.1, 213.3401. There are two related reasons behind

[9] The Board may take official notice of certain facts of common knowledge or matters that can be easily verified without requiring such evidence to be introduced to establish those facts. *See* 5 C.F.R. § 1201.64.

this goal: to achieve a workforce more representative of all segments of society, 5 C.F.R. § 213.3401; *see* 5 U.S.C. § 2301(b)(2), and to benefit from the infusion of the "enthusiasm, talents, and unique perspectives" that students and recent graduates bring to the workplace, E.O. 13,562, § 1. Similarly, the program answers a need to foster "a diverse workforce that includes students and recent graduates" because current competitive hiring practices provide significant barriers to these individuals. E.O. No. 13,562. There also has been a finding that the Pathways exception is necessary to achieve this goal. Specifically, E.O. 13,562, § 1 explains that the Pathways exception is necessary as a condition of good administration to promote employment opportunities for students and recent graduates in the federal workforce.

¶23 In addition, other regulations supply ample justification for the program's existence, including 5 C.F.R. § 362.301, which details the administration of the program, and states that the program "provides an entry-level developmental experience designed to lead to a civil service career in the Federal Government" for recent graduates, meaning that the person must apply within 2 years of having completed all academic course work. Section 362.302(b)(2) also reflects that veterans' rights were being taken into account, given that the regulation states that a "veteran, as defined in 5 U.S.C. § 2108, who due to military service obligation, was precluded from applying" to the program "shall have a full 2-year period of eligibility upon his or her release or discharge from active duty." Moreover, 5 C.F.R. § 362.303(b)(3)(v), which deals with filling positions within the program, states that the positions "must have progressively more responsible duties that provide career advancement opportunities" to permit participants to ascend a career ladder.

¶24 Furthermore, OPM, in the Federal Register notice for the Pathways Program, stated that the purpose of the program is to train and prepare participants for careers in the government by providing them with a 2-year "try-out" period, culminating in conversion to the competitive service if all goes

well. 77 Fed. Reg. 28,194-01 (May 11, 2012). OPM indicated therein that it was seeking to provide a "meaningful training and developmental experience, as well as the potential for a permanent job" for "[h]igh potential applicants who are interested in public service." *Id*. at 28,195. OPM added that, based on its experience with the civil service, "training and career development are among the attributes most often cited by recent graduates as desirable in employment opportunities." *Id.* OPM stated that, in keeping with the nature of the program, it was "designed to leverage the cognitive abilities of students and recent graduates," and to provide them "with training and mentoring opportunities." *Id*. at 28,201. OPM emphasized that the appointments in these programs "must have career advancement opportunities, i.e., they must be career ladder positions." *Id*. at 28,211. OPM opined that, at the same time, the program would allow agencies a period of time to evaluate "the potential of the Recent Graduate for a career in government." *Id*. at 28,201. OPM observed that it was "asking agencies to make an investment in these individuals through mentorship, training, and developmental activities," so that the agencies could "be able to reap the benefits of that investment by retaining those who successfully complete their Programs." *Id*. at 28,200.

¶25        OPM has furnished information on its website that explains in great detail the reasons behind the formation of the program. As an example, OPM observes that "[t]he Federal Government values the contributions made by students and recent graduates of all ages and backgrounds. We have been placed at a competitive disadvantage, though, compared to other sectors in recruiting and hiring students and recent graduates." *See Hiring Authorities—Students and Recent Graduates*, http://www.opm.gov/policy-data-oversight/hiring-authorities/ students-recent-graduates/. Also, in its transition guidance for the program, titled "Pathways for Students & Recent Graduates to Federal Careers," OPM points out that the program "targets individuals who have graduated recently from qualifying educational institution or programs" so that they "will be placed in a

dynamic, career development program." *See Pathways—For Students and Recent Graduates to Federal Careers—Transition and Implementation Guidance*, http://www.chcoc.gov/Documents/Attachments/Document146.pdf. The guidance explains that the program "enables individuals who lack experience to explore Federal civil service employment at the beginning of their careers," and "engages them at the onset of their work lives, before their career paths are fully established." *Id*. OPM also specifically notes in this guidance that it has taken into consideration the rights of veterans, given that it states that veterans are able to circumvent the 2-year application deadline "due to their military service obligation." *Id*. Importantly, the guidance further highlights that:

> Veterans' preference applies to selection for positions in the Pathways Programs. Selections must be made in accordance with the requirement of 5 CFR part 302, veterans' preference laws, and OPM guidance issued as a Memorandum for Chief Human Capital Officers dated February 9, 2009, on *Procedures of Compensably-Disabled Preference Eligibles in the Excepted Service*. This includes, but is not limited to, ranked and unranked referral lists.

*Id.*

¶26    Notwithstanding the above, there is the matter of whether the Recent Graduates Program, in effect, excepts individuals from competitive examining procedures rather than "positions" as appears to be contemplated in 5 U.S.C. § 3302(1). As relevant here, within the past 3 years, the DOL has appointed 1849-series Wage and Hour Specialists under both competitive and excepted appointing authorities. We recognize that this fact is not inconsistent with OPM's regulations, which by their own terms do not restrict Recent Graduates positions to those that are impracticable to fill through the competitive process. *Cf. Dean*, 115 M.S.P.R. 157, ¶¶ 23-25. And as discussed above, we do not question that the position of "Recent Graduate" Wage and Hour Specialist (as it is titled in the DOL announcement) is a different position from Wage and Hour Specialist. In any event, it could be argued that the intent of the Pathways Program is to allow agencies to fill positions that would normally be in the

competitive service with individuals who would not likely be within reach on a certificate of eligibles generated under the competitive examining process. *See* 5 C.F.R. § 213.3401. If this is the case, then OPM would have to address whether 5 U.S.C. § 3302(1) permits an exception of this type. We find that it does.

¶27 The Pathways Programs are an important recruiting and hiring tool into the federal workforce for applicants of all ages, backgrounds and experiences; especially veterans returning from service who strive to better their lives and that of their families by successfully pursuing higher education, and then want to continue serving their country in the federal civil service. As a result, we cannot agree with the appellant's claim that the Pathways Programs' minimum educational eligibility requirement inherently violated his and other veterans' preference rights. The record reflects that no fewer than 34 veterans met the minimum eligibility requirements of being a recent graduate who were on the certificate of eligibles for the vacancy announcement. These individuals were referred to the selecting official. *See* IAF, Tab 1 at 5A; *see also* PFR, Tab 3 at 7. If the minimum educational requirement did not prohibit these 34 individuals from being considered, then it does not follow that the requirement violated anyone's veterans' preference rights.

¶28 To further bolster our view about the legal propriety of the Pathways Programs, we note that, recently, in an unpublished decision, the Federal Circuit considered another challenge by Mr. Dean to an OPM-approved excepted service program in which he alleged that the program violated civil service competition rules and veterans' preference. *See Dean v. Department of the Air Force*, No. 2014-3114, 2014 WL 5786656 (Fed. Cir. Nov. 7, 2014) (unpublished). The program at issue in that case, the 2002 PALACE Acquire program, allows an agency to recruit and hire applicants for Criminal Investigator positions at various college campus recruiting events. As with the Pathways Programs,

merit-based qualifications and veterans' preference are key elements of the PALACE Acquire Programs' applicant consideration process.

¶29    The court in that *Dean* case affirmed the Board's earlier order, which noted that OPM had been delegated the authority to determine if a position is in the competitive service or not.  *Dean*, 2014 WL 5786656, at \*2; *see* 5 C.F.R. § 1.2. The court held that, when OPM makes a proper finding that a position should be excepted from the competitive service for conditions of good administration, the Board lacks authority to override OPM's discretionary classification.  The court concluded that, because OPM had made such a finding, as it can do likewise with the Pathways Programs, the Board properly found that the PALACE Acquire positions were legally classified as being in the excepted service and that the agency in that case did not violate competitive service laws or veterans' preference.

¶30    We thus find that the agency here properly imposed a minimum educational requirement for the GS-1849-07/09 "Recent Graduate" Wage and Hour Specialist position, and we conclude that the appellant failed to show that the agency acted contrary to any veterans' preference laws or rules, or violated his veterans' preference rights, when it considered this minimum educational requirement as the basis for excluding him from consideration.[10]

¶31    Finally, the appellant argues that the administrative judge's decision is in contravention of the U.S. Supreme Court's decision in *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979), and the Federal Circuit's decision in *Lazaro v. Department of Veterans Affairs*, 666 F.3d 1316 (Fed. Cir. 2012).  IAF, Tab 9; PFR File, Tabs 1, 4.  We disagree.  To the extent the appellant's argument is based on a constitutional challenge to VEOA on the ground that it impermissibly gives preference to certain veterans with degrees

---

[10] The appellant does not appear to dispute the fact that he did not meet the minimum educational requirement for the vacancy.

over other veteran applicants, his claim fails. Courts generally have rejected constitutional challenges to laws granting veterans' preference in government hiring; such laws have generally been upheld so long as they require that the veteran possess the minimum qualifications necessary to perform the position's duties. *See, e.g.*, *Feeney*, 442 U.S. at 277; *White v. Gates*, 253 F.2d 868, 869 (D.C. Cir. 1958); *Fredrick v. United States*, 507 F.2d 1264, 1266-69 (Ct. Cl. 1974). Also, in *Lazaro*, the Federal Circuit ruled that VEOA does not confer any special treatment to a veteran who is deemed unsuitable to hold a particular position, as occurred here. *See Lazaro*, 666 F.3d at 1319 ("[T]he VEOA does not enable veterans to be considered for positions for which they are not qualified.").

¶32    Accordingly, we find no error in the administrative judge's decision to deny the appellant's request for corrective action.

## ORDER

¶33    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory

deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.