# United States Court of Appeals for the Federal Circuit

04-3127

KEN A. STOUT,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

<u>Peter H. Noone</u>, Avery Dooley Post & Avery, LLP, of Belmont, Massachusetts, argued for petitioner.

<u>Raymond W. Angelo</u>, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With him on the brief were <u>Martha B. Schneider</u>, General Counsel, and <u>Stephanie M. Conley</u>, Reviewing Attorney. Of counsel was <u>Joyce G. Friedman</u>, Attorney.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3127


KEN A. STOUT,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

_____

DECIDED: November 23, 2004

_____

Before MICHEL, CLEVENGER, and DYK, Circuit Judges.

MICHEL, Circuit Judge.

Ken A. Stout ("Stout") appeals the final decision of the Merit Systems Protection Board ("Board") dismissing his appeal as untimely filed, without a showing of good cause for the sixty-eight-day delay in filing. Stout v. Dep't of Treasury, No. SF-0752-03-0171-I-1 (M.S.P.B. Nov. 7, 2003) ("Final Order"); Stout v. Dep't of Treasury, No. SF-0752-03-0171-I-1 (M.S.P.B. Mar. 13, 2003) ("Initial Decision"). Given specific allegations and substantial evidence of mental illness, and conflicts between his and the government's evidentiary submissions, we conclude that Stout was entitled to an evidentiary hearing on his asserted incapacity to file his appeal by the deadline shown in

his removal letter.  Accordingly, we vacate and remand with instructions that the Board hold such a hearing.

BACKGROUND

Stout has suffered from cerebral palsy since birth.  For some fifteen years, Stout worked at the San Bernardino, California branch of the Internal Revenue Service ("IRS" or "Agency") as a Revenue Agent.  On August 8, 2002, the IRS informed Stout of his proposed removal.  By letter dated September 12, 2002, he was removed from his position effective September 21, 2002.  The removal letter enclosed a copy of the Board regulations, and specified that "[t]o be timely, an appeal to the Board must be filed anytime during the period beginning with the day after the effective date of this action and ending thirty (30) calendar days after that date."  Stout's appeal was thus due no later than October 21, 2002.

Stout filed his appeal with the Board on December 28, 2002.[1]  On the appeal forms, Stout indicated that he wanted a hearing.  Stout also explained the reason for the late filing as follows:

> I went into a deep depression and the fact that I am disabled and lives alone just exaggerated matters.  I relied on friends and family for support as I found it difficult to even get out of bed, not alone go to grocery shopping or fixed myself something to eat.  I did not fill any important documents out timely; consequently I am currently living financially off friends and credit cards.[2]

---

[1]    The letter accompanying Stout's appeal bears two dates, December 18, 2002 and December 28, 2002.  Because both dates fall after the October 21, 2002 due date for Stout's appeal, and because no evidence suggests a change in his condition between those dates, this factual discrepancy is of no consequence to the issues before us.

[2]    All quotations are reproduced as they appear in the documents submitted to the Board.

As medical evidence of his condition, Stout attached an October 7, 2002 letter from his psychiatrist, stating he had been treating Stout at the Kaiser Permanente San Bernardino Psychiatry Clinic since June 5, 2002 and opining that Stout's "symptoms of depression and anxiety were caused by the stress at his work."

The Administrative Judge ("AJ") acknowledged receipt of Stout's appeal by order dated December 30, 2002 ("Acknowledgment Order"). The AJ explained that:

> To establish that an untimely filing was the result of an illness, you must: (1) Identify the time period during which you suffered from the illness; (2) submit medical evidence showing that you suffered from the alleged illness during that time period; and (3) explain how the illness prevented you from timely filing your appeal or a request for an extension of time. Lacy v. Department of the Navy, 78 M.S.P.R. 434, 437 (1998).

On January 7, 2003, Stout again requested a hearing.[3] On January 24, 2003, he submitted a written response to the Acknowledgment Order, stating:

> At the time of Appellant's removal, he was diagnosed with severe depression and stress brought on by and exacerbated by his removal. During the three months following the removal, which took place on September 21, 2002, Appellant continually suffered from severe depression, insomnia, and anxiety. As a result of the insomnia, stress, anxiety, and depression, Appellant's motor skills were increasingly diminished. He suffered from difficulty and at times inability to walk, drive a vehicle, and conduct other daily affairs as a result of the exacerbated condition.

Stout maintained that these circumstances were beyond his control and "affected his ability to comply with the time limits set forth by the Board's procedures." Along with the written response, Stout filed Clinic Progress Records from Kaiser Permanente documenting his medical appointments between June 25, 2002 and December 16,

---

[3] Stout retained counsel in December 2002 and was represented by counsel throughout his appeal before the Board. In requesting a hearing, Stout's counsel did not specify whether Stout sought a hearing on the merits or a hearing on the asserted good cause for the delay in filing.

3

2002, and an Initial Evaluation Form from the Department of Psychiatry at Kaiser Permanente dated June 5, 2002.

The IRS responded on February 3, 2003, alleging that Stout's submission failed to establish that he still suffered from an illness during the relevant time frame, i.e., between October 21, 2002, the due date for Stout's appeal, and December 28, 2002, the date Stout actually filed his appeal. The Clinic Progress Records, the Agency argued, showed rather that Stout reported "feeling better" on November 6, 2002. Similarly, the Agency contended that on December 16, 2002, Stout's treating physician observed that he "goes gambling," "feels 'good'," and has no complaints of depression.

The Agency further claimed that Stout's pro se activities during the period of delay show that he was not mentally or physically unable to timely file his appeal or to request an extension of time to do so. The Agency submitted an affidavit from an IRS Labor Relations Specialist, Colleen Blaikie ("Blaikie"), who testified that during the September to October 2002 time period, she had received several telephone calls from Stout, Marveen Stout (his mother), and Linda Gomez (his friend) ("Gomez"), regarding Stout's disability retirement and worker's compensation applications. The Agency also presented evidence that on November 16, 2002, Stout requested that the Office of Worker's Compensation Program ("OWCP") reconsider the denial of his benefits. The handwritten Request for Reconsideration, signed by Stout, explained that

> [d]ue to my medical condition + medicine from physician for work related stress + termination, I have mentally not been able to complete any of the information or forms.
>
> As of 11-16-02 I was finely in a condition with the necessary help from a friend and District Director to congress to complete all forms + request for my workman comp.

4

* * *

> The medication for my stress has not allowed me to be able to complete any of the necessary request or forms with out requesting help on my behalf. The additional termination from my federal job has added additional stress mentally and financially. I am under complete Doctor's care.

(Emphasis added). Based upon Stout's November 16 OWCP filing and his alleged admission to OWCP as to his improved condition, the Agency reasoned that Stout was able to file his appeal to the Board at least by November 16, 2002.

On February 14, 2003, Stout submitted additional materials, including a statement addressing the Agency's submissions, an affidavit from his mother, and affidavits from his friends and co-workers, Gomez, Jose Martinez, and J. Sheridan. Stout alleged that his removal from the IRS resulted in severe depression and stress, which exacerbated his cerebral palsy and rendered him "both physically and mentally unable to realize that there was a 30-day time frame to appeal the removal." In response to the Agency's assertions that "Appellant or persons acting on his behalf" contacted Blaikie regarding his removal and benefits, Stout represented that

> [t]he research, contact and pursuit of these benefits were conducted by my friend, Linda Gomez, whose affidavit demonstrates the quantity of help that she provided and my mother, Marveen Stout. In addition, the fax sent granting the Agency permission to discuss the status of the claim was written by Marveen Stout and only signed by me. This information is verified by affidavit from each party. Linda Gomez also filed the workers compensation appeal on my behalf.

Similarly, the Gomez, Martinez, and Sheridan affidavits asserted that upon his termination from the IRS, Stout's mental condition deteriorated, leaving him unable to complete the disability retirement and worker's compensation forms without help from family and friends who performed all of the research necessary and actually wrote the submissions themselves.

5

On March 13, 2003, the AJ dismissed Stout's appeal as untimely, finding that Stout failed to show that "his physical and/or psychological condition(s) affected or impaired him to the point that he was unable to either file a timely appeal or request an extension of time within which to do so." Initial Decision at 6. The AJ reasoned that the medical evidence submitted neither showed the incapacitating impact of Stout's psychological condition on his ability to manage his affairs nor explained the severity of his symptoms throughout the entire period of delay.

The AJ further found that, given the substantial help Stout received from his mother and Gomez in completing and filing documents pertaining to his employment-related benefits, he "has not shown that he could not have asked for help in pursuing his Board appeal during the 30-day period after the removal was effected." Id. (citing Marquez v. Office of Pers. Mgmt., 54 M.S.P.R. 89, 91 (1992) (dismissing an untimely appeal, stating, inter alia, that appellant was not so incapacitated that he could not have asked for assistance in appealing his case)).

Most importantly, the AJ emphasized Stout's November 16, 2002 Request for Reconsideration to the OWCP as "significant circumstantial evidence" that he was not physically or mentally incapable of filing his appeal to the Board or requesting an extension of time to file the appeal from September 21 through December 28, 2002. Id. at 7 (citing Gareis v. Dep't of the Interior, 90 M.S.P.R. 107, ¶ 8 (2001) (appellant failed to show that his mental and physical condition prevented him from filing a petition for review during the entire period of delay where appellant pursued other employment-related benefits during that period)). The AJ thus concluded that

> even if the appellant had shown that he was so impaired during the early portion of the relevant period (September 21, 2002 through November 15,

6

2002) that he was prevented from filing an appeal or requesting an extension, <u>and</u> that he was unable to obtain any assistance in filing a timely appeal, <u>I find that he was able to file his appeal as of November 16, 2002, and did not do so until December 28, 2002, a period of 42 days</u>. See Jordan v. U.S. Postal Service, 83 M.S.P.R. 500, ¶ 15 (1999), <u>aff'd</u>, 232 F.3d 913 (Fed. Cir. 2000) (Table) (appellant's failure to show that mental or physical condition prevented him from timely filing or requesting an extension during the <u>entire</u> period of the delay constituted a failure to show good cause to excuse the untimeliness).

<u>Id.</u> (emphasis added).

The Initial Decision became final on November 7, 2003, when the Board denied Stout's petition for review. 5 C.F.R. § 1201.113(b). Stout timely appealed to this court. We have jurisdiction over appeals from all final decisions of the Merit Systems Protection Board under 28 U.S.C. § 1295(a)(9), and heard oral argument on September 10, 2004.

## DISCUSSION

Stout presents several arguments on appeal. Stout contends, among other things, that the Board improperly denied him a hearing on the timeliness of his appeal. As with any decision of the Board, we must affirm the decision not to hold such a hearing unless the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000). Because a hearing on the question of timeliness is not required by statute or regulation, whether to hold such a hearing is a matter of discretion with the Board. See Womack v. Merit Sys. Prot. Bd., 798 F.2d 453, 455 (Fed. Cir. 1986) (no abuse of discretion in denying a hearing on timeliness where no disputed

7

issues of fact required resolution).[4]  We thus review the Board's denial of an evidentiary hearing on the issue of timeliness for abuse of discretion.  See Hutchison v. Merit Sys. Prot. Bd., 91 F.3d 1458, 1461 (Fed. Cir. 1996).

The Board argues on appeal that no issues of material fact warranted a hearing on the timeliness of Stout's appeal.  We disagree.  The AJ's Initial Decision rested on two critical findings:  (1) Stout failed to show that he could not have asked for help in pursuing his Board appeal during the thirty-day period following his removal (or at least during the thirty-some days following November 16, 2002) and (2) Stout requested reconsideration of the denial of his worker's compensation claim on November 16, 2002, demonstrating that he was not physically or mentally incapable of filing his appeal to the Board as of that date.  The latter finding led the AJ to conclude that Stout was not incapacitated throughout the entire period of delay, i.e., between October 21 and December 28, 2002.

With regard to the first finding, we are troubled by the AJ's determination that Stout had some obligation to show he was unable to request assistance from his family and friends in filing his Board appeal when there is at least some evidence to suggest that Stout's mental condition precluded his comprehension of the filing deadline.  In Marquez, the appellant did not claim that he was unaware of the deadline to appeal the denial of his retirement annuity application.  Having filed his appeal two and a half years

---

[4]  As we explained in Womack, "[t]here is no regulation that requires the Board to hold a hearing before determining whether an appellant has shown good cause for waiving the time limits for appeal."  798 F.2d at 455.  While 5 C.F.R. § 1201.24(d) provides that "[u]nder 5 U.S.C. 7701, an appellant has a right to a hearing," section 7701(a)(1) grants the appellant the right to a Board hearing on the merits of his appeal, rather than its timeliness.

late, the appellant attempted to establish good cause for the delay simply by submitting a letter from his physician stating that appellant suffered from high blood pressure and arthritis. In dismissing the appeal as untimely, the Board explained that the

> appellant's claim of poor health alone is not sufficient to establish a medical condition that rendered him immobile and unable to function on his own behalf every day of the nearly 2 ½ year delay period. The appellant has not claimed that he could not leave his bed <u>or that he was incapacitated to the point that he could not have asked someone to assist him in appealing his case</u>. The appellant's doctor has corroborated the appellant's arthritis and high blood pressure but has not provided any analysis of the severity of these conditions. Thus, the appellant has not shown that his poor health precluded him from taking any affirmative action to prosecute his appeal during the entire 28 month period.

54 M.S.P.R. at 91 (emphasis added).

Unlike the appellant in <u>Marquez</u>, Stout alleged he was not able to understand the procedures and deadline for appealing his removal. In fact, as the AJ noted, Stout "averred that he was unable to even read the agency's entire removal letter until reading it to his attorney over the telephone in December." Information as to where and when to appeal, of course, comes at the end of a removal letter. In view of Stout's representations that he was not mentally sound enough to appreciate the filing deadline, the AJ's partial reliance on <u>Marquez</u> is misplaced. While requests for assistance in filing an appeal are, in appropriate circumstances, considered as part of the good cause inquiry, an appellant's knowledge or awareness of the filing deadline must form a prerequisite to such consideration. An appellant cannot be taxed for failure to seek assistance with a deadline which he did not comprehend. Accordingly, only if such knowledge is established does the inquiry turn to whether the appellant possessed the mental competence to ask for assistance. Even then, an appellant must have capacity to do more than simply hand a removal letter to a relative and say, "take care of this."

9

He must also have the capacity to cooperate effectively with the relative so that the appeal can be filed. To the extent dictum in Marquez can be read to the contrary, it is specifically disapproved.

In this case, Stout asserted he was unable to comprehend that there was an October 21, 2002 deadline to appeal his removal from the IRS. Although the Agency adduced no contrary evidence, it nonetheless suggested that Stout must have known of the deadline because he received the removal notice setting forth the Board's appeal procedures via certified mail on September 20, 2002. Moreover, the Blaikie affidavit proffered by the Agency stated that "[o]n September 20, 2002, [she] received a telephone call from Ken Stout asking for a copy of the evidence file regarding his removal action." Stout's recognition of the filing deadline is thus in dispute. Stout's soundness of mind to ask for help also poses an evidentiary conflict. Absent resolution of these factual disputes, the AJ's reliance on Stout's failure to ask his family and friends for assistance in filing his Board appeal was improper.

The AJ's assumption that, "considering all of the help that he received," Stout failed to show he could not have asked for help is particularly unreasonable given Mrs. Stout's affidavit testimony that she "was not aware that [Stout] could appeal his removal or had to appeal his removal within a certain timeframe" and that she "never read a copy of the removal notice." While the AJ purported to credit this evidence, he nonetheless relied on the fact that Stout's mother did not expressly deny Blaikie's testimony that she had faxed Mrs. Stout a copy of Stout's removal notice on October 9, 2002. On Petition for Review, Stout submitted a second affidavit from his mother, specifically denying that she had ever received a copy of her son's removal letter from

10

Blaikie. While this second affidavit did not result in reconsideration of the Board's Initial Decision, it further establishes yet another factual dispute material to Stout's proffered good cause.

With regard to the Board's other critical findings, the record before us, although incomplete, also abounds with conflicting evidence and contrary inferences therefrom as to Stout's mental state. Stout represented to the Board that as a result of the severe depression and stress caused by his removal from the IRS, he was "both physically and mentally unable to realize that there was a 30-day time frame to appeal the removal."[5] He also testified via affidavit that he only regained his ability to "handle day-to-day activities in approximately mid-December . . . ." These statements were corroborated by the supporting affidavits submitted to the Board. Specifically, Gomez attested that "in no time after [Stout's] separation [from the IRS] that he was in any condition mentally (OR) physically able to follow any necessary steps to complete his disability retirement, workman comp from his Federal civil service position." Gomez added that "[Stout] was under medication and did not know what steps to take, we knew he could not handle any response on his be-half without our help." Marveen Stout further confirmed that "[f]or several months [following his removal], until approximately sometime in December, 2002, [Stout] had difficulty in talking and at times trouble with his lower extremities. [Stout] was unable to ambulate and manage most of his day-to-day affairs." (Emphasis added).

---

    [5]     Stout also presented the Board with medical evidence, albeit scant, of his depressive state. The Clinic Progress Reports described Stout as "fully depressed" on October 15, 2002, less than a week before the deadline for his Board appeal. On that date, Stout's psychiatrist likewise noted that Stout suffered from "mania" (associated with bi-polar disorder), for which he prescribed the drug Depakote.

11

In response to the Agency's argument that the filing of the Request for Reconsideration with the OWCP on November 16, 2002 demonstrated his ability to appeal his removal, Stout alleged that he did not draft the OWCP submission. He claimed that Gomez prepared and filed the Request for Reconsideration, which he merely signed.[6] Indeed, Gomez stated in her affidavit that "[w]ith [Stout] under Doct care + medication we processed his appeal as timely as possible due to all the information necessary had to be requested from his employer IRS and his Medical Physician at Kaiser Hospital." Based on the foregoing, we conclude that factual disputes exist regarding Stout's mental condition at least during the November-December period of delay in filing his Board appeal.[7]

The Board has held that if an appellant can establish a factual dispute as to whether he timely filed his appeal and he has requested a hearing, he is entitled to a timeliness hearing. See, e.g., Nelson v. United States Postal Serv., 88 M.S.P.R. 331, ¶ 5 (2001). In Nelson, the Board reversed the dismissal of appellant's appeal — without a hearing — as untimely filed, explaining that Nelson had presented "more than a bare allegation" that he timely filed his appeal by January 17, 2000. Id. ¶ 6. Nelson had supported his allegation that he appealed within the prescribed thirty-day period by proffering a copy of a letter from the Clerk of the Board responding to Nelson's inquiry regarding his December 24, 1999 appeal. Holding that Nelson raised a factual issue as

---

[6] In fact, at least to an untrained eye, the handwritten affidavit of Gomez and the handwritten Request for Reconsideration to the OWCP look strikingly similar.

[7] Neither the Initial Decision nor the Final Order explains why such a hearing was not held. We presume that the Administrative Judge found that no disputed factual issues warranted a hearing on the question of whether good cause excused the untimely filing of Stout's appeal.

to the timeliness of his appeal, the Board remanded the case with direction that the AJ hold a hearing regarding whether Nelson timely filed his appeal or showed good cause for his delay in filing.

The record before us, like the record in Nelson, presents factual disputes on at least two of the AJ's key findings. The first dispute concerns whether Stout understood the filing deadline for his Board appeal and, if so, was of sound enough mind either to file himself or to seek assistance and cooperate effectively in timely filing his appeal. The second relates to the proper inferences to be drawn from the pursuit of Stout's worker's compensation benefits. Those activities, especially Stout's mid-November Request for Reconsideration to the OWCP, were critical to both the AJ's conclusion that Stout was not incapacitated throughout the entire period of delay, and his rejection of Stout's excuse. In addition, issues of the credibility of the affidavits of Stout, Gomez, and Marveen Stout versus Blaikie abound. Given the direct conflict particularly between Mrs. Stout and Blaikie over whether in October the latter transmitted a copy of the removal letter to the former, we cannot see how the AJ could resolve this conflict without live testimony, including cross-examination, of both persons to assess demeanor credibility. Because Stout thus established factual disputes regarding his mental state during the period of delay, we hold that the Board abused its discretion when it failed to hold a hearing on his proffered excuse.

We follow the standard that the Board applied in Nelson to govern the issue of when the Board must hold an evidentiary hearing to determine whether an appellant

has shown good cause for his untimely filing.[8]  Under that standard, when an appellant

presents facially credible evidence sufficient to establish a dispute as to material facts

regarding the timely filing of his appeal or good cause excusing his late filing, the AJ

must hold such a hearing to resolve the factual dispute.  Of course, the AJ must first

inform the appellant that he is entitled to such a hearing upon a showing of a factual

dispute material to the issue of timeliness.  Moreover, should the AJ decide that no

material facts are in dispute and decline to hold an evidentiary hearing, he must set

forth specific reasons for his decision.  Such a decision is somewhat analogous to a

grant of summary judgment by a district court.  Accordingly, the reasoning must show

either the lack of a factual dispute or that any such dispute was not material to the

decision.  Materiality, in turn, as in the summary judgment context, means only that a

fact is likely to affect the outcome, but is not necessarily dispositive by itself.  There is,

---

[8] While we are unaware that any of our cases explicitly embrace this standard, our decision in Hutchison v. Merit Systems Protection Board, 91 F.3d 1458 (Fed. Cir. 1996), implicitly applies such a standard to analogous facts.  In Hutchison, petitioner claimed that on September 19, 1992, she timely appealed the Board's decision awarding her deceased husband's annuity to another woman claiming to be his surviving spouse.  91 F.3d at 1459.  Upon refiling her appeal on August 15, 1994, Hutchison submitted a photocopy of what she claimed was "the cover sheet of the original appeal" showing the September 19, 1992 date and her signature, along with a declaration stating that she filed the appeal by U.S. mail on September 19, 1992.  In the order acknowledging the receipt of her appeal, the AJ stated that "[i]f you further establish that there is a dispute as to facts which will affect my decision on the issue of timeliness . . . , you are also entitled to a hearing if you requested one."  Id.  Although Hutchison requested a timeliness hearing, the AJ did not hold one prior to issuing her initial decision dismissing the appeal as untimely.

We reversed, holding that based on her declaration and the photocopy of the cover page of her first appeal, Hutchison had established, as a matter of law, a dispute as to the facts which would affect the AJ's decision on timeliness.  Accordingly, we held that the AJ "deviated from the requirements and procedure set out in her [Acknowledgment] [O]rder" by dismissing Hutchison's appeal without a hearing on timeliness.  We thus remanded the case to the Board with instructions to hold an evidentiary hearing on that issue.  Id. at 1461.

however, one difference. The summary judgment rule that the non-movant must produce sufficient evidence contrary to that submitted by the movant to raise a genuine dispute depends on discovery under the Federal Rules of Civil Procedure, which do not apply at the Board. There, no discovery rights arise as to timely filing or good cause for late filing. Therefore, a genuine evidentiary dispute need not be shown. Specific alleged or documented facts to show good cause can suffice.

Applying the Nelson standard to this case, the Board should have held an evidentiary hearing to ascertain, inter alia, the level of Stout's involvement, if any, in the administrative actions relating to his worker's compensation benefits and the extent of his awareness, if any, of the deadline and method for filing his appeal. Accordingly, we vacate the Board's decision and remand the case for an evidentiary hearing as to all such material factual issues relating to Stout's proffered good cause for filing late.

Further, given the facts of record here, we hold Stout's capacity to file an application for an enlargement of time to file his appeal stands or falls together with his capacity to file the appeal itself. At least on this record, any incapacity to do one establishes incapacity to do the other. If Stout's mental illness and physical condition rendered him unable to appreciate the process and deadline for appealing his removal, it rendered him equally unable to ask for an extension of that process and deadline; an applicant must comprehend a deadline in order to ask that it be extended or to request assistance in doing so. Thus, we reject the alternative reasoning of the Board that Stout failed to show he was unable to request an extension of time to file his appeal.

The standard cited by the AJ for showing good cause as a result of an illness was that set forth in Lacy v. Department of the Navy, 78 M.S.P.R. 434, 437 (1998),

15

which requires, among other things, that a party "explain how the illness prevented him from timely filing his appeal <u>or a request for an extension of time</u>." (Emphasis added). An appellant's ability to request an extension of time to file his appeal, similar to his capacity to request assistance as discussed above, presumes cognizance of the filing deadline and method, and the mental wherewithal to file for an extension or to seek assistance in so doing. In addition, an appellant must understand that an extension may be available upon timely request. In cases alleging good cause due to mental incapacity, the ability to timely file an appeal and to file a request for an extension will often be coextensive; both presuppose cognition of one's state of affairs, potentially impaired by serious mental illness. The ability to perform these two actions — filing the appeal or requesting an extension to file by the thirty-day deadline — may prove more distinct in cases involving a physical, rather than mental, illness. For instance, an appellant recovering from a major surgery during the thirty-day appeal period, may have the physical capacity to draft a short request for an extension of time or ask another to do so yet, at the same time, lack the capacity to complete the more elaborate appeal form, or to request assistance in doing so, detailing specific grounds for challenging an agency's action. But in cases of mental illness, it is also possible that an appellant may have the capacity to file, or request assistance in filing, an extension request while lacking the capacity to file, or cooperate effectively with another in filing, the appeal itself. In either case, however, the requirement set forth in <u>Lacy</u> that an appellant explain how an illness prevented him from requesting an extension of time must necessarily turn on whether appellant knew of the filing deadline, knew that he could request an extension, and had the mental or physical capacity to do so. Absent such a

16

three-part finding, an appellant should not be faulted for not seeking an extension to file his appeal. To the extent Lacy can be read to suggest otherwise, it is disapproved.

For these reasons, the decision of the Board dismissing Stout's appeal as untimely filed without a showing of good cause is

VACATED and REMANDED.