# United States Court of Appeals
# for the Federal Circuit

---

**DAVID DEAN,**

*Petitioner*

**v.**

**DEPARTMENT OF LABOR,**

*Respondent*

---

2015-3131

---

Petition for review of the Merit Systems Protection Board in No. AT-3330-13-0235-I-1.

---

Decided: December 9, 2015

---

DAVID DEAN, Lugoff, SC, pro se.

DOUGLAS GLENN EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM; JAMES V. BLAIR, MELANIE L. PAUL, Office of the Solicitor, United States Department of Labor, Washington, DC; JULIE L. FERGUSON QUEEN, KATHIE A. WHIPPLE, ROBIN M. RICHARDSON, STEVEN E. ABOW, Office of the General Counsel, Office of Personnel Management, Washington, DC.

---

Before CHEN, MAYER, and STOLL, *Circuit Judges.*

PER CURIAM.

Petitioner David Dean seeks review of a decision by the Merit Systems Protection Board ("Board") rejecting his claim under the Veterans Employment Opportunities Act of 1998.

BACKGROUND

I.

Most federal civil service employees are employed in either the competitive service or the excepted service. *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 492 (D.C. Cir. 1988); *see also* 5 U.S.C. §§ 2102(a)(1), 2103(a). Applicants for employment in the competitive service must generally take a "competitive examination" administered by the Office of Personnel Management ("OPM"). *Nat'l Treasury Emps. Union*, 854 F.2d at 492. The President, however, is authorized to make "necessary exceptions of positions from the competitive service" when warranted by "conditions of good administration." *Id.* (citing 5 U.S.C. § 3302(1)). Applicants for excepted service positions are not required to take a competitive examination; instead, more flexible and informal procedures can be used to hire employees into the excepted service. *Id.*

The Veterans' Preference Act ("VPA") is also an important aspect of competitive service hiring. Under the VPA, agencies must provide advantages to veterans and their families, known as "preference eligibles." 5 U.S.C. § 2108(3) (defining "preference eligible" to include certain veterans and their family members); *id.* §§ 3309–3318 (describing advantages given to preference eligibles). Under 5 U.S.C. § 3320, these veterans' preference programs also apply to hiring in the excepted service. Specifically, § 3320 provides that the excepted service shall be

filled "in the same manner and under the same conditions required for the competitive service by sections 3308–3318." OPM's regulations provide that when numerical scores are used to evaluate candidates, the agency will grant additional points to preference eligibles. 5 C.F.R. § 302.201(a). If, however, candidates for an excepted service position are evaluated without numerical ratings, the agency can use the veterans' preference as a plus factor. *Id.* § 302.201(b); *Patterson v. Dep't of Interior*, 424 F.3d 1151, 1158–59 (Fed. Cir. 2005). Further, the Veterans Employment Opportunities Act ("VEOA") provides a remedy for a preference-eligible veteran "who alleges that an agency has violated . . . [his or her] rights under any statute or regulation relating to veterans' preference." 5 U.S.C. § 3330a(a)(1)(A).

In 2010, President Obama signed Executive Order No. 13,562, creating the "Pathways Programs," including the Internship Program, the Recent Graduates Program, and the modified Presidential Management Fellows Program. Exec. Order No. 13,562, 75 Fed. Reg. 82,585 (Dec. 30, 2010). The President explained:

> The Federal Government benefits from a diverse workforce that includes students and recent graduates, who infuse the workplace with their enthusiasm, talents, and unique perspectives. The existing competitive hiring process for the Federal civil service, however, is structured in a manner that, even at the entry level, favors job applicants who have significant previous work experience. This structure, along with the complexity of the rules governing admission to the career civil service, creates a barrier to recruiting and hiring students and recent graduates. It places the Federal Government at a competitive disadvantage compared to private-sector employers when it comes to hiring qualified applicants for entry-level positions.

*Id.* The order directed OPM to issue regulations implementing the Pathways Programs. *Id.* The order further provided that participants in the Recent Graduates Program "must have obtained a qualifying degree . . . within the preceding 2 years," except that certain veterans would be eligible within 6 years of obtaining a qualifying degree. *Id.* at 82,586.

Pursuant to the Executive Order, OPM promulgated 5 C.F.R. pt. 362 to implement the Pathways Programs. With respect to the Recent Graduates Program, OPM set forth eligibility criteria in 5 C.F.R. § 362.302 explaining that eligibility was limited to certain recent graduates. OPM also explained that "[a]n agency must evaluate candidates using OPM Qualification Standards for the occupation and grade level of the position being filled." 5 C.F.R. § 362.303(d).

## II.

Mr. Dean, a preference-eligible veteran, applied for a position as a "Recent Graduate" Wage and Hour Specialist within the Department of Labor. The position's announcement stated that the position "is a part of the Pathways Employment Program," open only to "[e]ligible recent graduates from qualifying educational institutions." R.A. 31. The announcement separately identified job "qualifications"—which did not include a minimum educational requirement—and program "eligibility"— which required a "degree or certificate from a qualifying educational institution within the previous two years," or previous six years for certain veterans. R.A. 33–35. Thirty-four veterans met the eligibility requirements of the position and were referred to the selecting official. Mr. Dean ultimately was not considered for the position because he had not graduated within the timeframe established under the program.

After exhausting his administrative remedies, Mr. Dean filed a VEOA appeal asserting that his veter-

ans' preference rights were violated by his exclusion from consideration for the "Recent Graduate" Wage and Hour Specialist position. An administrative judge denied Mr. Dean's request for corrective action. Mr. Dean filed a petition for review with the Board, arguing that his veterans' preference rights were violated because there was no rational basis for the recent graduate criterion and because the job announcement prescribed a minimum educational requirement. The Board found that Mr. Dean's complaint that his veterans' preference rights were violated implicated two statutes: 5 U.S.C. § 3302(1), authorizing the President to except positions from the competitive service, and 5 U.S.C. § 3308, limiting OPM's ability to include minimum educational requirements for positions in the competitive service that are subject to examination. Mr. Dean also argued that the administrative judge improperly closed the record without warning, failing to consider evidence and arguments he submitted, and that the administrative judge improperly denied him a hearing.

The Board determined that the administrative judge improperly closed the record, and therefore gave consideration to all of Mr. Dean's written submissions. The Board also determined that the administrative judge did not err in denying Mr. Dean a hearing because there were no disputed issues of material fact.

The Board next considered its jurisdiction over Mr. Dean's VEOA complaint. Pursuant to 5 U.S.C. § 3330a(a)(1)(A), redress under the VEOA is limited to violations "under any statute or regulation relating to veterans' preference." Although the Board did not expressly address whether § 3302 is a statute relating to veterans' preference, the Board implicitly concluded that it is such a statute when it considered the merits of Mr. Dean's claim alleging a violation of § 3302. The Board then determined that § 3308 is not a statute relating to veterans' preference, overruling its prior decision to the

contrary in *Burroughs v. Dep't of the Army*, 115 M.S.P.R. 656, *aff'd*, 445 F. App'x 347 (Fed. Cir. 2011). Neverthe-less, the Board considered whether violations of either § 3302(1) or § 3308 had occurred and affirmed the admin-istrative judge's initial denial of Mr. Dean's request for corrective action.

Mr. Dean timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a Board de-cision is limited. We must affirm a final decision of the Board unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Stout v. Merit Sys. Prot. Bd.*, 389 F.3d 1233, 1237 (Fed. Cir. 2004). We review questions of law, including jurisdictional judg-ments and statutory interpretation, without deference. *Wallace v. Office of Pers. Mgmt.*, 283 F.3d 1360, 1361 (Fed. Cir. 2002); *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995).

We review the validity of an agency's interpretation of a statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under a *Chevron* analysis, we first ask "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If so, we "must give effect to the unam-biguously expressed intent of Congress." *Id.* at 843. If not, we ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

As an initial matter, we must satisfy ourselves as to whether the Board possessed jurisdiction over Mr. Dean's complaint. As previously noted, the Board's jurisdiction over VEOA complaints is provided by 5 U.S.C. § 3330a and is limited to alleged violations of any statute or regulation "relating to veterans' preference." Because Mr. Dean's complaint implicated §§ 3302(1) and 3308 of Title 5, we must consider whether these statutes relate to veterans' preference. Notably, the government argues that they do not.

## I.

### 5 U.S.C. § 3302(1) relates to veterans' preference

We hold that § 3302(1) is a statute "relating to veterans' preference" and thus the VEOA confers jurisdiction to consider claims under that section.

Section 3302(1) provides that "[t]he President may prescribe rules governing the competitive service. The rules shall provide, as nearly as conditions of good administration warrant, for necessary exceptions of positions from the competitive service." The Board previously held that § 3302(1) is a statute relating to veterans' preference within the meaning of § 3330a. *Dean v. Office of Pers. Mgmt.*, 115 M.S.P.R. 157 (2010). Because "relating to" is not defined by any statute or regulation, the Board gave the phrase its common meaning, i.e., "stands in some relation to," "has bearing on," "concerns," or "has a connection with." *Id.* at 165. The Board ultimately determined that "section 3302(1) is a statute relating to veterans' preference because veterans' preference is a central feature of the system for examining candidates for entry into the competitive service; the creation of exceptions from the competitive service necessarily implicates veterans' preference rights." The Board further explained:

> Veterans' preference in hiring has its force and ef-
> fect under the two methods for assessing candi-
> dates for the competitive service . . . . By
> establishing competitive-service hiring as the
> norm, section 3302(1) is intrinsically connected to
> veterans' preference rights in that it ensures that
> such rights are not circumvented or ignored.

*Id.* at 166, 168.

We recognize that veterans' preferences apply to both the competitive service and the excepted service by operation of § 3320. However, the government never disputes that moving positions from the competitive service to the excepted service necessarily implicates the strength of the impact of veterans' preferences on hiring decisions. Instead, the government argues that § 3302(1) is not a statute relating to veterans' preference. The government first notes that the text of § 3302(1) does not refer to veterans or veterans' preferences and argues that it therefore is not a statute relating to veterans' preference. We are not persuaded that a statute must recite the term "veteran" to be a statute relating to veterans' preference. Rather, we are persuaded by the Board's reasoning in *Dean*, 115 M.S.P.R. at 166, 168.

The government next argues that the context and structure of the VEOA bolster its position, noting that the VEOA defines the term "veterans' preference require-ment" and "expressly identifie[s] a list of the statutes and types of regulations that qualify as a 'veterans' preference requirement' for purposes of the VEOA." Appellee's Br. 14; *see* VEOA § 6, 112 Stat. 3182, 3187–88 (codified at 5 U.S.C. § 2302(e)(1)). Because § 3302(1) is not included in that list of "veterans' preference requirements," the government argues that it is not a statute "relating to veterans' preference." This argument is not persuasive.

The phrase "relating to veterans' preference" in § 3330a is broader in scope on its face than a "veterans'

preference requirement" as defined in § 2302(e)(1). Nothing in the text of § 3330a or the VEOA suggests that a "statute . . . relating to veterans' preference" is limited to a "veterans' preference requirement" as defined in § 2302(e)(1). To the contrary, § 2302(e)(1) specifically defines "veterans' preference requirement" for the purpose of § 2302 only. 5 U.S.C. § 2302(e)(1) ("For the purpose of this section, the term 'veterans' preference requirement' means any of the following provisions of law . . . ."). Congress used broader language in § 3330a ("relating to veterans' preference") to delimit the scope of complaints that could be brought by preference-eligible veterans under the VEOA.

While we agree that statutes "relating to veterans' preference" may include the statutes enumerated in § 2302(e)(1), we do not find it appropriate to restrict the scope of statutes "relating to veterans' preference" under § 3330a to only the "veterans' preference requirements" enumerated in § 2302(e)(1). *See Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n.9 (2004) (recognizing "the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended" (internal quotation marks omitted)); *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1389 (Fed. Cir. 2013) ("A cardinal doctrine of statutory interpretation is the presumption that Congress's 'use of different terms within related statutes generally implies that different meanings were intended.'" (quoting 2A Norman Singer, *Statutes and Statutory Construction* § 46.06 (7th ed. 2007))). Congress could have listed the statutes "relating to veterans' preference" for the purpose of § 3330a—just as it listed the "veterans' preference requirements" for the purpose of § 2302—but it did not do so. The government's attempt to limit the scope of § 3330a to the "veterans' preference requirements" of § 2302 is inconsistent with broader language used by Congress in § 3330a.

For the reasons articulated above, we agree with the Board's holding in *Dean*, 115 M.S.P.R. at 168, that § 3302(1) is a statute relating to veterans' preference for the purpose of jurisdiction under § 3330a.

### 5 U.S.C. § 3308 relates to veterans' preference

The Board held, and the government argues, that the Board lacked jurisdiction under the VEOA to consider a violation of § 3308. As explained below, we disagree and hold that the VEOA confers jurisdiction on the Board to consider violations of § 3308 because it is a statute "relating to veterans' preference."

Section 3308 states:

The Office of Personnel Management or other examining agency may not prescribe a minimum educational requirement for an examination for the competitive service except when the Office decides that the duties of a scientific, technical, or professional position cannot be performed by an individual who does not have a prescribed minimum education. The Office shall make the reasons for its decision under this section a part of its public records.

The Board held that § 3308 is not a statute relating to veterans' preference for the purpose of § 3330a, overruling its prior decision in *Burroughs*.

In *Burroughs*, the Board held that § 3308 is a statute relating to veterans' preference, explaining that § 3308 derives from § 5 of the VPA. 115 M.S.P.R. at 661; *see also* VPA § 5, 58 Stat. 387, 388–89. Section 5 of the VPA provided that "[n]o minimum educational requirement will be prescribed in any civil-service examination except for such scientific, technical, or professional positions the duties of which the Civil Service Commission decides cannot be performed by a person who does not have such education." VPA § 5, 58 Stat. 387, 388–89 (codified at 5

U.S.C. § 854 (1946)). The Board in *Burroughs* also cited 49 U.S.C. § 40122(g)(2)(B) for additional support that § 3308 is a statute relating to veterans' preference. *Id.* Section 40122(g) lists provisions of Title 5 that apply to the Federal Aviation Administration's ("FAA") personnel management system, including "sections 3308–3320, relating to veterans' preference." 49 U.S.C. § 40122(g). We affirmed the Board's holdings in *Burroughs*. 445 F. App'x 347, 350 (Fed. Cir. 2011).

The Board in this case, however, reversed its holding in *Burroughs*, concluding that § 3308 is not a statute relating to veterans' preference. The Board acknowledged the similarity between § 3308 and § 5 of the VPA, but reasoned that "a mere general similarity between provisions of section 3308 and the Veterans' Preference Act, by itself, is insufficient to conclude that this section relates to veterans' preference." 122 M.S.P.R. 276, 282 (2015). The Board also discounted 49 U.S.C. § 40122(g)—the FAA statute that expressly states that "sections 3308–3320" "relat[e] to veterans' preference"—because the VEOA does not apply to the FAA.

The government similarly argues that § 3308 is not a statute relating to veterans' preference because the text of the statute does not specifically refer to veterans or veterans' preference, and because § 2302(e)(1) does not list § 3308 as a "veterans' preference requirement." As discussed above with respect to § 3302, we are not persuaded by these arguments.

We hold that § 3308 is a statute relating to veterans' preference and reverse the Board's holding to the contrary. Section 3308 has its roots in the VPA. While the Board characterizes the relationship between § 3308 and § 5 of the VPA as "a mere general similarity," 122 M.S.P.R. at 282, the provisions are almost identical. The fact that the language of § 3308 is nearly identical to a provision within the VPA is strong evidence that Congress

understood § 3308 as relating to veterans' preference. Moreover, Congress explicitly stated that § 3308 relates to veterans' preference. 49 U.S.C. § 40122(g). We see no reason to ignore Congress's clear statement that § 3308 "relat[es] to veterans' preference" just because the VEOA does not apply to the FAA.

## II.

Now that we have satisfied ourselves as to the Board's jurisdiction over Mr. Dean's complaint, we next consider Mr. Dean's assertion that the Board improperly closed the record and failed to consider his written submissions. Following Mr. Dean's petition for review, the Board held that the administrative judge had improperly closed the record without warning and considered all of Mr. Dean's written submissions. We therefore find this complaint to be moot.

Mr. Dean next argues that he should have been granted an oral hearing before the Board. We review the Board's determination that no hearing was required for an abuse of discretion. 5 U.S.C. § 7703(c). Section 3330a(d)(1) authorizes the Board to prescribe procedures governing appeals to the Board under the VEOA. The Board permits decisions to be made on the merits of a VEOA appeal without a hearing when there is no dispute of material fact and one party must prevail as a matter of law. *See Waters-Lindo v. Dep't of Def.*, 112 M.S.P.R. 1, ¶ 5 (2009). The Board did not abuse its discretion in concluding that this case presents no disputes of material fact and that, as such, Mr. Dean was not entitled to a hearing.

## III.

Turning to the merits of Mr. Dean's appeal, we consider whether placement of the "Recent Graduate" Wage and Hour Specialist position into the excepted service as part of the Recent Graduates Program violated § 3302(1). Mr. Dean appears to argue that the Recent Graduates

Program is invalid to the extent it excludes certain veterans who are not recent graduates from applying to positions within the program. We disagree.

Under § 3302(1), the President may make "as nearly as conditions of good administration warrant, for necessary exceptions of positions from the competitive service." Pursuant to this authority, President Obama created the Pathways Programs, including the Recent Graduates Program. Exec. Order No. 13,562, 75 Fed. Reg. 82,585. Section 7 of the Executive Order amended 5 C.F.R. § 6.1(a) to provide:

> OPM may except positions from the competitive service when it determines that . . . recruitment from among students attending qualifying educational institutions or individuals who have recently completed qualifying educational programs can better be achieved by devising additional means for recruiting and assessing candidates that diverge from the processes generally applicable to the competitive service.

*Id.* at 82,587. Section 7 also amended 5 C.F.R. § 6.2 to create Schedule D for the excepted service, which includes:

> Positions . . . for which the competitive service requirements make impracticable the adequate recruitment of sufficient numbers of . . . individuals who have recently completed qualifying educational programs. These positions . . . are temporarily placed in the excepted service to enable more effective recruitment from all segments of society by using means of recruiting and assessing candidates that diverge from the rules generally applicable to the competitive service.

*Id.*

In creating the Pathways Programs, the President stated that "conditions of good administration (specifically, the need to promote employment opportunities for students and recent graduates in the Federal workforce) make necessary an exception to the competitive hiring rules for certain positions in the Federal civil service," citing the merit system principle set out in 5 U.S.C. § 2301(b)(1) for the Federal Government "to achieve a work force from all segments of society." *Id.* at 82,585. The President explained the benefits the Federal Government derives from a diverse workforce that includes recent graduates, as well as the barriers to hiring these same individuals. *Id.*

Moreover, beginning in August of 2009, OPM conducted a review of the Federal Government's ability to recruit and hire students and recent graduates, soliciting input from agencies, academic organizations, and the public. Excepted Service, Career and Career-Conditional Employment; and Pathways Programs, 76 Fed. Reg. 47,495, 47,496 (proposed Aug. 5, 2011). OPM drew several conclusions from this review. OPM found barriers to hiring students and recent graduates, observing that these individuals lack the experience needed to compete in the competitive hiring system. *Id.* at 47,497. OPM also concluded:

> By exposing students and recent graduates to jobs in the Federal civil service at the beginning of their careers, we will engage them at the outset of their work lives, before their career paths are fully established, inform them about the wide variety of interesting opportunities available in the Federal Government, and break through commonly held stereotypes about "government work."

*Id.* This review informed the President's decision to issue Executive Order No. 13,562. *Id.*

The President delegated to OPM the authority to issue regulations implementing the Pathways Programs. Exec. Order No. 13,562, 75 Fed. Reg. at 82,585. OPM issued 5 C.F.R. § 213.102, defining "positions" that may be excepted under § 3302(1) to include "[t]hose that are intended to be removed temporarily from the competitive service to allow for targeted recruiting and hiring from among a particular class of persons." 5 C.F.R. § 213.102(c)(2). In drafting this regulation, OPM noted:

> This clarification reflects the President's (and several of his predecessors') interpretation of 5 U.S.C. § 3302(1) and will permit OPM . . . to continue its practice of allowing agencies to fill positions that would normally be in the competitive service through excepted service appointments in order to allow them to recruit and hire from among classes of individuals that are disadvantaged by competitive examining.

Excepted Service, Career and Career-Conditional Employment; and Pathways Programs, 76 Fed. Reg. at 47,498.

In light of the President's and OPM's thorough discussion of the barriers to hiring recent graduates into positions in the competitive service, the noted benefits recent graduates provide in the workforce, and the merit system principle in 5 U.S.C. § 2301(b)(1) for the Federal Government "to achieve a work force from all segments of society," we conclude that the President acted within the authority Congress granted him in § 3302(1) to create the Recent Graduates Program and except positions from the competitive service to fulfill the goals of the program. We see no conflict between § 3302 and 5 C.F.R. § 213.102, OPM's regulation permitting temporary exception of positions that would normally be in the competitive service to allow for targeting of a particular class of persons, in this case recent graduates. As the "Recent Grad-

uate" Wage and Hour Specialist position was excepted
from the competitive service pursuant to OPM's regula-
tions implementing the Recent Graduates Program, we
also conclude that this position was properly excepted
from the competitive service pursuant to § 3302(1).

## IV.

We next consider whether placement of the "Recent
Graduate" Wage and Hour Specialist position into the
excepted service as part of the Recent Graduates Program
violated § 3308. Section 3308 restricts the use of mini-
mum educational requirements for an examination for the
competitive service. This restriction also applies to the
excepted service through § 3320, which provides that
positions in the excepted service shall be filled "in the
same manner and under the same conditions required for
the competitive service by sections 3308–3318." Congress
delegated the responsibility for implementing § 3320 to
OPM. *See* 5 U.S.C. § 1302(c). Accordingly, OPM has
issued regulations setting forth procedures for applying
veterans' preference rights to the excepted service. *See* 5
C.F.R. pt. 302. In particular, OPM issued 5 C.F.R.
§ 302.202, which provides:

> An agency shall not include a minimum educa-
> tional requirement *in qualification standards* ex-
> cept for a scientific, technical, or professional
> position the duties of which the agency decides
> cannot be performed by a person who does not
> have a prescribed minimum education.

(emphasis added).

We have considered how veterans' preference provi-
sions apply to the excepted service through § 3320 in
three prior cases. In doing so, we have construed § 3320
as requiring application of veterans' preference proce-
dures in excepted service hiring to the extent that it is
administratively feasible to do so. *See Jarrard v. Dep't of*

*Justice*, 669 F.3d 1320 (Fed. Cir. 2012); *Gingery v. Dep't of Def.*, 550 F.3d 1347 (Fed. Cir. 2008); *Patterson*, 424 F.3d 1151.

In *Patterson*, we considered application of 5 U.S.C. § 3309 to the excepted service via § 3320. 424 F.3d 1151. Section 3309 entitles a preference-eligible veteran "who receives a passing grade in an examination to additional points above his earned rating." A preference-eligible veteran alleged that his veterans' preference rights under § 3309 were violated by not adding additional points to his rating. *Id.* at 1154. The attorney position at issue, however, was in the excepted service, and not subject to examination. *Id.* at 1157–58. We concluded that "Congress has not spoken on the issue of how to apply the principles of veterans' preference to positions within the excepted service that are not subject to examination," and that OPM's regulations were therefore entitled to deference under *Chevron*. *Id.* at 1158–59. OPM's regulation required hiring agencies to "follow the principle of veterans' preference as far as administratively feasible" for attorney positions in the excepted service. 5 C.F.R. § 302.101(c). Because the attorney position was not subject to examination or numerical scores and ranking, the agency instead considered veteran status as a positive factor in reviewing applications. *Patterson*, 424 F.3d at 1159. We concluded that 5 C.F.R. § 302.101(c) and the positive factor test were reasonable interpretations of how §§ 3309 and 3320 apply to attorney positions within the excepted service. *Id.* at 1159–60.

In *Gingery*, we considered application of 5 U.S.C. § 3318 to the excepted service via § 3320. 550 F.3d 1347. Section 3318 requires that an appointing authority obtain OPM's permission to pass over a preference eligible on a certificate, and notify the preference eligible of the proposed pass over, the reasons for the pass over, and his right to respond when the preference eligible has a compensable service-connected disability of 30% or more. The

preference-eligible veteran in *Gingery* had a compensable service-connected disability of 30% and sought an auditor position in the excepted service as part of the Federal Career Intern Program ("FCIP"). *Id.* at 1350. A category rating system was used to fill the auditor position, and applicants were selected from certificates. *Id.* In passing over Mr. Gingery, the agency followed 5 C.F.R. § 302.401(b), which applied to the excepted service and only required the agency to record its reasons for passing over a preference-eligible veteran and furnish a copy to the veteran *if requested*. *Id.* The preference-eligible veteran therefore alleged that the pass-over procedures of § 3318 were not followed when he was not selected for an auditor position. *Id.* We agreed with the veteran and concluded that, unlike *Patterson*, there was nothing to preclude application of § 3318 to the excepted service because § 3318 "applies to selection from certificates, which are used in both the competitive and excepted services." *Id.* at 1353. We therefore held 5 C.F.R. § 302.401(b) invalid because it provided less protection than Congress guaranteed certain veterans in § 3318. *Id.*

In *Jarrard*, we again considered application of § 3318 to the excepted service through § 3320. 669 F.3d 1320. A preference-eligible veteran applied for attorney positions in the excepted service and alleged that the agencies did not follow the pass-over provisions of § 3318, instead just considering his veteran status as a "positive factor." *Id.* at 1321. We first determined that rating or other examination systems were barred for attorney positions. *Id.* at 1325. We concluded that the pass-over provisions of § 3318 were inconsistent with the bar on attorney ratings because § 3318 "requires the submission of a certificate that ranks applicants" and held that agencies were exempt from the procedures of § 3318 for attorney positions. *Id.* at 1325–26.

With this background, we turn to how the restriction in § 3308 on minimum educational requirements for

examinations applies to hiring in the excepted service, which does not use examinations. We recognize that, under § 3320, § 3308's prohibition of educational requirements for an examination for the competitive service applies to the excepted service "in the same manner and under the same conditions required for the competitive service." Congress has not, however, addressed how § 3308 applies to the excepted service when there is no examination. Thus, Congress left a gap in the statute and OPM's regulations to fill this gap are entitled to deference under *Chevron*. As such, we must consider whether OPM's regulations are based on a permissible construction of §§ 3308 and 3320.

Consistent with § 3308, OPM's regulations governing employment in the excepted service prohibit an agency from including "a minimum educational requirement *in qualification standards*, except for a scientific, technical, or professional position the duties of which the agency decides cannot be performed by a person who does not have a prescribed minimum education." 5 C.F.R. § 302.202 (emphasis added). This regulation applies to making an appointment to a specific position within the excepted service. *Id.* Notably, OPM's regulations do not prohibit a minimum educational requirement as a *program eligibility* condition.

The educational requirement at issue in this case is not a qualification standard. It relates to eligibility for a specific program—the Recent Graduates Program. Indeed, OPM explained the distinction between "qualification standards" and "eligibility" in its regulations implementing the Recent Graduates Program. First, OPM issued a regulation entitled "Eligibility," explaining that eligibility is limited to "individual[s] who obtained a qualifying associates, bachelors, master's, professional, doctorate, vocational or technical degree or certificate from a qualifying educational institution, within the previous 2 years or other applicable period provided [in

subsection (b)]." 5 C.F.R. § 362.302(a). OPM also issued a regulation explaining the qualification standards an agency must apply when evaluating candidates for positions in the Recent Graduates Program: "Qualifications. An agency must evaluate candidates using OPM Qualification Standards for the occupation and the grade level of the position being filled." *Id.* § 362.303(d). Thus, because the "Recent Graduate" Wage and Hour Specialist position was placed in the excepted service pursuant to the authority Congress granted to the President in § 3302, the eligibility criteria of 5 C.F.R. § 362.302 and the qualification standard of 5 C.F.R. § 362.303(d) apply.

Here, we conclude that OPM's regulations implementing §§ 3308 and 3320 are permissible and reasonable. For excepted service positions not subject to examinations, OPM's regulations restrict the use of minimum educational requirements in qualification standards for positions. 5 C.F.R. § 302.202. Under the Recent Graduates Program, OPM's implementing regulations instruct agencies to follow OPM Qualification Standards for the occupation and grade level of each position while restricting only the eligibility for the program to recent graduates. We find no conflict between OPM's regulations and Congress's intent expressed in §§ 3308 and 3320.

Mr. Dean appears to argue that the inclusion of any minimum educational requirement, including in the Recent Graduates Program eligibility criteria, for the "Recent Graduate" Wage and Hour Specialist position is a violation of §§ 3308 and 3320. While Mr. Dean's position may represent a permissible interpretation of these statutory provisions, Congress has not mandated such a result and we cannot substitute our judgment for OPM's reasonable regulations implementing these statutes. The agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009).

CONCLUSION

For the foregoing reasons, we hold that the Board had jurisdiction to consider violations of §§ 3302(1) and 3308 pursuant to § 3330a of the VEOA because §§ 3302(1) and 3308 are statutes relating to veterans' preference. We affirm the Board's determination that Mr. Dean's veterans' preference rights under §§ 3302(1) and 3308 were not violated.

**AFFIRMED**

COSTS

No costs.